808 P.2d 58

**CITY OF ALBUQUERQUE,
Respondent–Appellant,**

v.

**STATE of New Mexico, ex rel. VILLAGE
OF LOS RANCHOS de ALBUQUER-
QUE, et al., Petitioners–Appellees.**

**No. 11688.**

Court of Appeals of New Mexico.

Jan. 31, 1991.

Certiorari Denied March 20, 1991.

William G. Walker, Walker & van Heijen-oort, Hector & Associates, P.A., Thomas L. Popejoy, Popejoy, Leach, Green & Melkus, P.C., Albuquerque, for petitioners-appellees.

William C. Schaab, James P. Fitzgerald, Rodey, Dickason, Sloan, Akin & Robb, P.A., David Campbell, City Atty., Edward R. Pearson, Asst. City Atty., Albuquerque, for respondent-appellant.

Hal Stratton, Atty. Gen., Elizabeth Glenn, Asst. Atty. Gen., Santa Fe, amicus curiae-State Atty. Gen.

Hollis Ann Weisz, Nordhaus, Haltom, Taylor, Tardash & Frye, Santa Fe, David Doheny, Gen. Counsel, Elizabeth S. Merritt, Andrea C. Ferster, Assts. Gen. Counsel, Washington, D.C., amicus curiae-National Trust for Historic Preservation & Rio Grande Preservation Soc.

## OPINION

DONNELLY, Judge.

On rehearing, the previous opinion filed January 8, 1991, is withdrawn and the following is substituted therefor.

The City of Albuquerque (City) pursues this interlocutory appeal from the district court's issuance of a preliminary injunction stopping the City's construction of the Montano River Crossing Project (project). Six issues were certified for review. We have consolidated these questions and discuss (1) whether a municipal highway project duly authorized by law and ap-

proved by concerned governmental agencies is subject to abatement as a public nuisance; (2) whether the New Mexico Prehistoric and Historic Sites Preservation Act (PHSPA), NMSA 1978, §§ 18–8–1 to –8 (Cum.Supp.1989), applies to the project; and (3) whether the district court erred in granting a preliminary injunction. We answer these questions, holding that under the record before us the public works project in question does not constitute a public nuisance per se, that it was error to issue the preliminary injunction, and that the PHSPA does not apply to the stages of the construction project for which planning has been completed and which the City had already obtained necessary state and federal approval to construct prior to the effective date of the PHSPA. In view of these holdings, we do not reach the several issues regarding standing of the petitioners.

Commencing in the 1960's, the City began studies to determine the feasibility of constructing one or more crossings over the Rio Grande to facilitate travel between the east and west portions of the City and surrounding areas. After conducting studies, holding public hearings, and considering various alternatives, the City decided to proceed with construction of the project. The project, designed to be implemented in several stages, included construction of the Montano Bridge, extension of Montano Boulevard west of Rio Grande Boulevard, and the addition of improvements to Montano Boulevard east of Coors and Rio Grande Boulevards.

Prior to commencement of the project, the City applied to and obtained a permit from the United States Army Corps of Engineers to construct a bridge across the Rio Grande. The City also obtained prior approval of the State Highway Department for construction of the project, pursuant to NMSA 1978, Section 3–33–10 (Orig.Pamp.), and secured approval from the State Historic Preservation officer for construction of those portions of the project which traversed or affected areas of prehistoric or historic interest. In furtherance of the project, the City condemned or purchased the necessary right-of-way on the west side of the Rio Grande and a portion of the right-of-way on the east side of the proposed roadway. Additionally, the City undertook to obtain additional land on the east side of the river for widening Montano Boulevard between Rio Grande Boulevard and Second Street.

On April 4, 1989, petitioners, the Village of Los Ranchos de Albuquerque (Village), together with a number of individual citizens, filed suit in the District Court of Bernalillo County, alleging, among other things, that the project constituted a public nuisance and that construction, operation, and maintenance of the project would cause irreparable injury to petitioners, their property, and the surrounding area. Petitioners' suit requested an award of damages and injunctive relief halting the project. The Village, situated outside the northwest boundary of the City, was incorporated in 1958 as a municipal corporation. After the City obtained title to most of the project right-of-way, the Village extended its boundaries to include areas adjacent to portions of the project corridor.

The individual petitioners initiated suit, both in their individual capacities and as private attorneys general acting in the name of the State of New Mexico, pursuant to NMSA 1978, Section 30–8–8 (Repl.Pamp. 1984). Petitioners' complaint also alleged that the City was in the process of advertising for the submission of bids for the project and was proceeding with additional condemnation actions.

In May 1989, a temporary restraining order was issued by the district court, followed in June 1989 by a decision and preliminary injunction determining that petitioners had made a prima facie showing that the project would constitute "a significant interference with the public health, safety, peace, comfort or convenience, and that the public harm that [would] be caused by the * * * [p]roject outweigh[ed] the benefit to the public from building it." The preliminary injunction barred the City from obligating or spending public funds, from proceeding to execute or sign contracts or other documents to acquire access routes, or proceeding further with construction of the project.

During the pendency of this action, the state legislature enacted PHSPA. The act was signed into law and became effective June 16, 1989. On June 20, 1989, petitioners filed an amended complaint adding a second count, seeking additional injunctive relief under the provisions of the PHSPA. Petitioners sought to enjoin the City from proceeding further on the project, alleging that construction would adversely affect Los Poblanos Historical District and the John Simms House. The Simms House, a privately owned residence located adjacent to the proposed project, is the residence of a former governor and is listed on the state register of cultural properties.

After the effective date of PHSPA, the parties filed cross-motions for summary judgment. On July 24, 1989, the district court entered an order denying the parties' motions for summary judgment and denying petitioners' motion for enlargement of the preliminary injunction. By a separate order, the court granted the City's motion to dismiss petitioners' individual claims for monetary damages.

On August 22, 1989, the court entered a consolidated decision and order certifying for interlocutory appeal questions involved in this appeal.

## VIABILITY OF PUBLIC NUISANCE CLAIMS

Underlying the City's appeal is the central question of whether a municipal public works project undertaken pursuant to statutory authority may be determined to constitute a public nuisance per se.

The district court enjoined the City from proceeding further with the project based upon its findings that petitioners had made a substantial showing that the project would constitute a public nuisance and would significantly interfere "with the public health, safety, peace, comfort or convenience, and that the public harm that [would] be caused by the * * * [p]roject outweigh[ed] the benefit to the public from building it." In its decision, the court found that construction of the project would result in an increase in noise and vibration and injury to the aesthetic beauty of the surrounding area, and would have an adverse effect upon the wildlife and plant life of the area. The court further found that petitioners "established that the above described harms [were] irreparable," and there was no adequate remedy at law.

The City contends on appeal that the trial court erred in denying its motion to dismiss both petitioners' statutory and common law public nuisance claims. Each argument advanced by the City is similarly premised. It asserts that prior to initiation of the project, the project had been approved by the City Council, the United States Army Corps of Engineers, the State Highway Department, and the State Historical Preservation officer. Thus, it argues, it had obtained all the necessary approvals for the project prior to the commencement of this action, that the project had been authorized and implemented pursuant to the City's constitutional and statutory authority, and that, as a matter of law, it could not constitute a public nuisance per se.

■ New Mexico law recognizes two types of nuisance: public nuisance and private nuisance. *See, e.g., Stamm v. City of Albuquerque,* 10 N.M. 491, 62 P. 973 (1900); *Padilla v. Lawrence,* 101 N.M. 556, 685 P.2d 964 (Ct.App.1984). The difference between the two is governed in part by a determination of whose rights are affected by the actions alleged to constitute a nuisance. Actions to abate private nuisances are intended to protect the rights of private individuals to the peaceful enjoyment of their land. *Scott v. Jordan,* 99 N.M. 567, 661 P.2d 59 (Ct.App.1983). Correspondingly, proceedings to enjoin public nuisances have as their major purpose the protection of rights held in common by the public. *See Town of Clayton v. Mayfield,* 82 N.M. 596, 485 P.2d 352 (1971); *Padilla v. Lawrence; Restatement (Second) of Torts* § 821B (1979); *see also* NMSA 1978, § 30-8-1 (Repl.Pamp.1984). In addition to public or private nuisances, New Mexico law classifies nuisances as nuisances per se or nuisances in fact. *See Koeber v. Apex-Albuq Phoenix Express,* 72 N.M. 4, 5, 380 P.2d 14, 15-16 (1963) (quoting *Denney v. United States,* 185 F.2d 108, 110 (10th Cir. 1950)) (nuisance per se is one which is at all

times a nuisance; a nuisance in fact is a condition which is not a nuisance per se but may become a nuisance in fact by reason of its circumstances, location, or surroundings); *see also Aguayo v. Village of Chama,* 79 N.M. 729, 449 P.2d 331 (1969); *Scott v. Jordan.*

■ In this case, petitioners allege and the trial court found that the construction and operation of the project would constitute a public nuisance. In addressing this contention, we deem it unnecessary to distinguish between public nuisances which constitute a violation of Section 30–8–1, and common law public nuisances. In the absence of a showing of fraud, collusion, or illegality, and subject to the limitations hereinafter noted, we determine that the City's constitutional and statutory authority to construct public highways and bridges constitutes a valid defense to a claim of nuisance per se under either category of nuisance. *See Northern Transp. Co. v. City of Chicago,* 99 U.S. 635, 640, 25 L.Ed. 336 (1878) ("That cannot be a nuisance, such as to give a common-law right of action, which the law authorizes"); *Warren County v. North Carolina,* 528 F.Supp. 276 (E.D.N.C.1981) (courts will not enjoin as a nuisance an activity which has been authorized by valid legislative authority); *City of Birmingham v. City of Fairfield,* 375 So.2d 438 (Ala.1979) (injunctive relief is generally improper to prohibit as a nuisance statutorily authorized municipal improvements, unless the improvements are shown to be negligently constructed or maintained); *City of Addison v. Dallas Indep. School Dist.,* 632 S.W.2d 771 (Tex. Ct.App.1982) (lawful activities of government are not nuisances per se); *see also* § 30–8–1 (public nuisance consists of knowingly "creating, performing or maintaining anything affecting any number of citizens *without lawful authority* which is either: injurious to public health, morals or welfare, or interferes with the exercise and enjoyment of public rights, including the right to use public property" (emphasis added)).

The general rule applied by most courts which have considered the question of whether construction of a highway, or other public project initiated by a municipality, constitutes a public nuisance per se is set forth in 13 E. McQuillan, *The Law of Municipal Corporations* § 37.25, at 84–85 (3d ed.1987) (footnotes omitted):

It is well settled, and it has been affirmed repeatedly by numerous judicial decisions of the several jurisdictions, that in the absence of constitutional or charter restrictions, municipal discretion includes the nature and extent of the improvement, the location of the improvement, the plans and manner of construction * * * and the opening and vacation of streets, alleys and public ways.... The municipality's determination is conclusive, in the absence of fraud or collusion, and not subject to review by the courts.

■ A public nuisance is a wrong that arises by virtue of an unreasonable interference with a right common to the general public. *Padilla v. Lawrence; Restatement (Second) of Torts* § 821B(1). However, acts which the law authorizes to be done, if carried out and maintained in the manner authorized by law, where a public entity acts under its governmental authority, do not constitute public nuisances per se. *See Downside Risk, Inc. v. Metropolitan Atlanta Rapid Transit Auth.,* 156 Ga. App. 209, 274 S.E.2d 653 (1980) (subway project authorized by referendum did not constitute public nuisance); *Borough of Collegeville v. Philadelphia Suburban Water Co.,* 377 Pa. 636, 105 A.2d 722 (1954) (construction of dam authorized by law not subject to injunction as public nuisance); *Nugent v. Vallone,* 91 R.I. 145, 161 A.2d 802 (1960) (building of wharf for oil tankers not subject to abatement as public nuisance where project was approved by proper authorities); *Deaconess Hospital v. Washington State Highway Comm'n,* 66 Wash.2d 378, 403 P.2d 54 (1965) (en banc) (construction of highway near hospital not subject to abatement as nuisance, where construction authorized by law); *see also Farnsworth v. City of Roswell,* 63 N.M. 195, 315 P.2d 839 (1957) (courts should decline to pass judgment on policy decision of other branches of government, if governmental entity duly

arrived at its policy decision in lawful manner); *Hobbs v. Town of Hot Springs,* 44 N.M. 592, 106 P.2d 856 (1940) (decision of municipal authorities to extend street involves use of the judgment and discretion entrusted to them by law and is not subject to challenge in absence of fraud); *Oliver v. Board of Trustees,* 35 N.M. 477, 1 P.2d 116 (1931) (paving district approved by municipality not subject to being set aside by court, absent a showing of fraud); *North v. Public Serv. Co. of New Mexico,* 101 N.M. 222, 680 P.2d 603 (Ct.App.1983) (absent claim of fraud, bad faith or abuse of discretion, courts should not interfere with the decisions of a grantee of the power of eminent domain); *First Nat'l Bank in Albuquerque v. Nor–Am Agric. Prods., Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct.App.1975) (potentially dangerous product manufactured under authority of federal government held not to constitute nuisance as a matter of law). *But see State ex rel. New Mexico Water Quality Control Comm'n v. City of Hobbs,* 86 N.M. 444, 525 P.2d 371 (1974) (city sewer plant may be operated or maintained in an unlawful manner so as to constitute public nuisance in fact); *Murphy v. City of Carlsbad,* 66 N.M. 376, 348 P.2d 492 (1960) (city is not immune from suit for negligently maintaining public park containing attractive nuisance).

The New Mexico Legislature has expressly authorized municipalities, including home rule cities, to construct necessary streets, roads, and highways. NMSA 1978, § 3–18–10 (Repl.1985). In furtherance of this authority, municipalities are empowered "[b]oth within the municipal boundary and for a distance not extending beyond the planning and platting jurisdiction of the municipal boundary, [to condemn] private property for public use for the purpose of: (1) laying out, opening and widening streets, alleys and highways or their approaches." *Id.* Additionally, the legislature adopted in NMSA 1978, Section 67–8–15(A) (Orig.Pamp.), a statement of public policy recognizing:

> The construction of modern highways is necessary to promote public safety, facilitate the movement of present-day motor traffic, both interstate and intra-

state in character, and to promote the national defense, and in the construction of such highways it is also in the public interest to provide for the orderly and economical relocation of utilities when made necessary by such highway improvements * * *.

Subsection 67–8–15(F) further states that the "statements in this Section * * * are legislative determinations and declarations of public policy, and this act shall be liberally construed in conformity with its declarations and purposes to promote the public interest." Similarly, N.M. Const. article X, section 6(D), provides that home rule municipalities "may exercise all legislative powers and perform all functions not expressly denied by general law or charter." The constitutional provision further specifies that "[t]he purpose of this section is to provide for maximum local self-government. A liberal construction shall be given to the powers of [home rule] municipalities." *Id.,* § 6(E).

■ The City, in furtherance of its constitutional and statutory powers, determined that construction and implementation of the project was necessary and in the public interest. Generally, the courts will not inquire into the wisdom of legislative or executive decisions, or substitute their views for those of other departments or entities. *Cf. McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975) (held not within purview of court to question wisdom or policies of legislative enactments); *see also Garcia v. Albuquerque Pub. Schools Bd. of Educ.,* 95 N.M. 391, 622 P.2d 699 (Ct. App.1980). Although construction of the project may result in some damage or inconvenience to those individuals who reside or own property situated near or within the project area, the record indicates that hearings, studies, and planning conducted by the City spanned a period of over ten years; that the City held public hearings involving the project and considered a number of alternative locations and designs; that the City modified the site and design plans to accommodate environmental and noise problems; and that the City, state, and federal authorities were empowered by law

to determine the feasibility and public necessity for the project as well as its location and design. *See Richards v. Washington Terminal Co.*, 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914) (legislature may legalize what otherwise would constitute a nuisance, subject to right of injured parties to recover for any taking of private property for public use); *see also* N.M. Const. art. II, § 20. *See generally*, NMSA 1978, § 41–4–11 (Repl.Pamp.1989).

■ The matters relating to the design and location of municipal road projects, if carried out in conformity with applicable law, generally involve policy questions entrusted to the discretion of municipal or public authorities. *See, e.g., Mutz v. Municipal Boundary Comm'n*, 101 N.M. 694, 688 P.2d 12 (1984) (decisions involving territory to be annexed by a municipality are generally held to be legislative in nature and beyond court's power to modify, absent a showing of noncompliance of law); *Deer Mesa Corp. v. Los Tres Valles Special Zoning Dist. Comm'n*, 103 N.M. 675, 712 P.2d 21 (Ct.App.1985) (courts generally may not inquire into statutory policy or substitute their views for those of the legislature); *North v. Public Serv. Co. of New Mexico* (questions involving the necessity or expediency of a taking in eminent domain are generally legislative policy matters outside the purview of judicial review); *Gallegos v. Homestake Mining Co.*, 97 N.M. 717, 643 P.2d 281 (Ct.App.1982) (courts may not inquire into policy decisions or substitute their views for those of the legislature).

We have considered *City of Hobbs*, relied upon by petitioners, to support their argument that a municipality can be held responsible in a public nuisance action brought pursuant to Section 30–8–8. While that case holds that a municipality possesses no greater right to create or maintain a nuisance than a private individual, we do not understand the court as having rejected the principle that a public project otherwise authorized by law does not constitute a public nuisance per se. In *City of Hobbs*, no challenge was made to the City's authority to construct or operate the sewage

plant. Instead, the challenge was directed to the manner in which the plant was operated or maintained, so as to result in the creation of a nuisance in fact. *See also Murphy v. City of Carlsbad.*

■ Consideration of petitioners' nuisance claims necessarily involves a determination of the propriety of the trial court's issuance of injunctive relief. We conclude that the preliminary injunction halting the project was improvidently issued. In *Deaconess Hospital,* the Washington Supreme Court considered a case similar to the instant cause. There, the court, relying in part on a state statute, reversed the district court's injunction barring the construction of a freeway near the hospital, holding:

> Once the purpose for which the lands are taken has been adjudged to be public, *the kind and type of roadway, the route to be followed, the design and engineering details become the subject of administrative decision. These decisions will not be set aside or molested by the courts unless shown to have been arrived at without statutory authority or by bad faith or fraud, or capriciously or arbitrarily.*
>
> . . . . .
>
> Courts ought not substitute their judgment for that of the administrative agency * * *. If the administrative agency has acted honestly, with due deliberation, within the scope of and to carry out its statutory and constitutional functions, and been neither arbitrary, nor capricious, nor unreasonable, there is nothing left for the courts to review.

*Id.,* 66 Wash.2d at 405–06, 403 P.2d at 70 (emphasis added). *See also Borough of Collegeville v. Philadelphia Suburban Water Co.; Nugent v. Vallone. See generally* 2 *Shepard's Causes of Action* (Sovereign Immunity) § 11, at 497 (1983).

The existence of lawful authority to construct or carry out a public works project is a legal question. *Cf. Deaconess Hospital v. Washington State Highway Comm'n.* Since it is clear that the City was invested with the statutory authority to plan and construct those phases of the project presently before this court, it follows that the

preliminary injunction was improvidently issued by the court below.

■ Although a court may enjoin a public entity from negligently operating or maintaining a public nuisance in fact, *State ex rel. New Mexico Water Quality Control Comm'n v. City of Hobbs*, the mere possibility that injury may result from a public works project undertaken pursuant to the City's statutory authority does not constitute a proper basis for issuance of an injunction, and the courts will not interfere where the claimed injury is doubtful, speculative, or contingent. *Phillips v. Allingham*, 38 N.M. 361, 33 P.2d 910 (1934).

■ Thus, absent a showing that the project is, or will be, conducted or maintained in a manner contrary to law, we determine that the City is lawfully empowered to initiate and construct such project, and the project is not subject to abatement as a public nuisance per se. The construction, operation, and maintenance of a highway or bridge in a lawful manner does not constitute a public nuisance. *See Deaconess Hospital v. Washington State Highway Comm'n.* On the record before us, we find no basis for a finding of nuisance in fact. The district court should have granted the City's motion for summary judgment and dismissed Count I of the complaint.

## PREHISTORIC AND HISTORIC SITES PRESERVATION ACT

Petitioners' amended complaint also alleged that the action of the City in constructing the project violated the provisions of PHSPA, Sections 18–8–1 to –8.

Suit was originally filed in this action on April 4, 1989. On June 16, 1989, the district court granted a preliminary injunction enjoining the City from proceeding further with the project. On the same day, the legislature, by 1989 N.M. Laws, chapter 13, enacted PHSPA, and the governor signed the act into law. After the legislation became effective, petitioners applied to the court to expand the scope of the prior

injunction and to enjoin the City from violating the provisions of PHSPA. Petitioners argue that the proposed project will adversely affect Los Poblanos Historic District, which is on both the National Register of Historic Properties and the Register of Cultural Properties. Petitioners further assert the project may harm the John Simms House, a privately owned residence located within the Los Poblanos Historic district.

Although the court refused to enlarge its preliminary injunction, in a later consolidated decision issued August 22, 1989, the court determined that the project will pass through the southernmost portion of the historic district, and that under Section 18–8–7 of the PHSPA:

> No public funds of the state or any of its agencies or political subdivisions shall be spent on any program or project that requires the use of any portion of or any land from a significant prehistoric or historic site unless there is no feasible and prudent alternative to such use, and unless the program or project includes all possible planning to preserve and protect and to minimize harm to the * * * site resulting from such use.

The district court's consolidated decision certified questions for review by interlocutory appeal to this court and found that the second count of petitioners' amended and supplemental complaint in this case was supported by authority contained in the PHSPA, noting that "[Section] 7 of the Act provides * * * that 'No public funds of the state or any of its agencies or political subdivisions shall be *spent*'" without compliance with the act. (Emphasis added.)

The City asserts that Section 18–8–7 of the act became effective June 16, 1989, and that, contrary to the district court's conclusions, the provisions of the law have no retroactive effect as to those portions of the project for which planning was complete and the City had previously received authorization and approval to construct. We agree.[1]

---

1. Phase 2A of the project is situated outside the Historical district. The plans for phase 2B provide for construction of that portion of the project within the right-of-way acquired by the

In reaching this conclusion, we emphasize the distinction between retroactive application and the prospective application of a statute. New Mexico law presumes that a statute will operate prospectively unless the legislature clearly indicates that the statute is to be given retrospective effect. *See Psomas v. Psomas,* 99 N.M. 606, 661 P.2d 884 (1982) (statute is presumed to operate prospectively unless clear intention exists to give act retroactive effect); *Bradbury & Stamm Constr. Co. v. Bureau of Revenue,* 70 N.M. 226, 372 P.2d 808 (1962) (statutes are presumed to not operate retroactively unless a contrary legislative intention is clearly apparent); *Hansman v. Bernalillo County Assessor,* 95 N.M. 697, 625 P.2d 1214 (Ct.App.1980) (recognizing general rule that statutes, except those dealing with remedial procedure, are to be construed as operating prospectively unless there is a clear legislative intention to the contrary). Since the language of PHSPA does not specifically evince a legislative intent that the act should be applied retrospectively, we determine that PHSPA must be applied prospectively.

Generally, a retrospective law:

may be defined more specifically as one "which is made to affect acts or transactions occurring before it came into effect, or rights already accrued, and which imparts to them characteristics, or ascribes to them effects, which were not inherent in their nature in the contemplation of the law as it stood at the time of their occurrence." Black on Interpretataion [sic] of Laws, 247.

*Wilson v. New Mexico Lumber & Timber Co.,* 42 N.M. 438, 440, 81 P.2d 61, 62 (1938) (quoting *Ashley v. Brown,* 198 N.C. 369, 372, 151 S.E. 725, 727 (1930)) (claimant, who sustained injuries on April 13, 1937, could not recover under the workmen's compensation act due to the fact that claimant filed his suit on December 16, 1937, and the court refused to apply the amended version of the act, which increased the statute of limitations from six months to one year on June 11, 1937, because this would constitute a retroactive construction). Statutes which have the effect of taking away or impairing vested rights acquired under existing laws, or creating new obligations, imposing new duties, or attaching new disabilities relating to transactions or considerations already past, are generally deemed to be retroactive. *See Pepin v. Beaulieu,* 102 N.H. 84, 89, 151 A.2d 230, 235 (1959) (quoting *Woart v. Winnick,* 3 N.H. 473, 479 (1826)). *See also Rubalcava v. Garst,* 53 N.M. 295, 206 P.2d 1154 (1949); *Norton v. Alcoholic Beverage Control Bd.,* 695 P.2d 1090 (Alaska 1985).

However, a statute does not operate retroactively merely because some of the facts or conditions which are relied upon existed prior to the enactment. *See State v. Mears,* 79 N.M. 715, 449 P.2d 85 (Ct.App.1968) (allowing a statute to operate which provided credit for time spent in jail prior to conviction, even though defendant had been jailed prior to the statute's enactment, because defendant was convicted after the statute became effective); *Lucero v. Board of Regents of Northern New Mexico State School,* 91 N.M. 770, 581 P.2d 458 (1978) (allowing a statute providing tenure rights to teachers after their third consecutive year of employment to operate, even though plaintiff's years of consecutive service occurred prior to the statute's enactment).

In determining whether PHSPA has a prospective or retrospective application to the present case, we must also address the special characteristics of ongoing construction projects and how these characteristics affect the definitions outlined above. Large construction projects frequently span lengthy periods of time,

City in 1967, fifteen years before the establishment of the Village's extension of its territory to include the area embraced by phase 2 of the project. The City has planned, designed, and acquired the right-of-way for phases 2A and 2B of the project. The other portion of the project includes phase 1A extending from Second Street to Fifth Street. Phase 1B involves widening of the Montano corridor from Fifth Street to 500 feet east of Rio Grande Boulevard. Phase 1A and 1B are planned and designed, but right-of-way acquisition for these phases was not complete at the time of the issuance of the injunction.

and the work may be segmented into different stages. Each stage may involve different parties and comprise transactions which are scheduled for different completion dates. As a result, a newly enacted statute may have both a prospective and retrospective application to different transactions belonging to the same ongoing project.

Therefore, in addition to the prospective-retrospective concept outlined above, the prospective application of a newly enacted act to an ongoing construction project must also be determined by the words of the statute, the legislature's intent in enacting the statute, and by the public policy considerations which are evident from the statute. *See Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (the court considering the words of the Endangered Species Act of 1973, its legislative background, and the stated policies of the Act to enjoin the operation of a virtually completed federal dam which had been authorized prior to 1973); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (the court considering the language and the intent of Congress in interpreting the National Environmental Policy Act (NEPA)); *Robinswood Community Club v. Volpe,* 506 F.2d 1366 (9th Cir.1974) (involving the determination of whether NEPA should be given prospective or retrospective application).

As observed in *Norton,* there is a presumption against retrospective legislation. The presumption is premised upon policy considerations that individuals, in planning and conducting their business, should be able to rely with reasonable certainty on existing laws.

 The PHSPA, Section 18–8–7, declares that "[n]o public funds of the state or any of its agencies or political subdivisions shall be *spent* on any program or project that requires the use of any portion of or any land from a significant prehistoric or historic site" without compliance with the act. (Emphasis added.) Petitioners argue that this language establishes a prospective application of PHSPA up to the time the funds actually pass from the treasury of the state or political subdivision to the recipient. However, since public funds are commonly paid to contractors throughout the course of construction projects, and contract payments frequently extend even beyond the date the actual construction is concluded, the statutory interpretation urged by petitioners would have the effect of halting the construction of previously approved projects by causing funds to be no longer available to pay to contractors to finish construction, or to preclude payment for work previously completed. *See Interstate Marina Dev. Co. v. Los Angeles County,* 155 Cal.App.3d 435, 202 Cal.Rptr. 377 (1984) (the state cannot use its police power to avoid meeting its financial obligations established by contract). *See also* N.M. Const. art. II, § 19. Such interpretation would contravene the legal obligations incurred by the state or its subdivisions prior to PHSPA.

"In interpreting a statute this court may presume that the legislature was informed as to existing law, and that the legislature did not intend to enact a law inconsistent with any existing law or not in accord with common sense or sound reasoning." *City Comm'n of Albuquerque v. State ex rel. Nichols,* 75 N.M. 438, 444, 405 P.2d 924, 928 (1965). *See also McDonald v. Lambert,* 43 N.M. 27, 85 P.2d 78 (1938) (court may presume that legislature did not intend a construction of a statute that will render the statute inconsistent with other laws or with the public policy of the state).

Viewing the provisions of PHSPA in their entirety, we conclude that the legislature did not intend that the act be given retroactive application to the project in question, and that applying PHSPA to those portions of an ongoing project which have received final approvals from the appropriate state and federal authorities would constitute such retroactive application. The obtaining of final approval signals that basic planning and design work for the construction project has been substantially completed, the stages of planning have evolved to an almost finished product,

the funds to be spent have been reviewed, and the project is authorized to be constructed.

The need for a clear application of an act which may affect ongoing construction projects was recognized in *Robinswood Community Club*, involving a federal highway project:[2]

> [G]overnments, just as ordinary citizens, have a need for definiteness in the conduct of their affairs. In this sense, we view the applicability of NEPA to a project begun prior to its effective date as similar to that of a statute of limitations. Some rights will be saved but others will be lost when we apply an arbitrary standard to an ongoing series of events. Nevertheless, the standard must be applied and we believe that the point of final approval is the logical place.

*Robinswood Community Club v. Volpe*, 506 F.2d at 1370.

Although the analytical structure of the NEPA cases may be distinguished from our facts,[3] we find that final approval is also the most logical place to attach the point of retroactivity to PHSPA, based on the intent of the legislature and the public policy considerations discussed above. Certainly, the legislature may enjoin the operation of publicly funded projects, as evident in *Tennessee Valley Auth.;* however, the facts herein are distinguishable from *Tennessee Valley Auth.* Specifically, the very words of the Endangered Species Act command all federal agencies "to ensure that actions authorized, funded, or carried out by them do not jeopardize the continued existence" of an endangered species or "result in the destruction or modification of habitat of such species." 16 U.S.C. § 1536 (1976 ed.). This language, in conjunction with a complete legislative history, clearly indicates that the "plain intent of Congress in enacting the statute was to halt and reverse the trend toward species extinction, whatever the cost." *Tennessee Valley Auth. v. Hill*, 437 U.S. at 184, 98 S.Ct. at 2297. The language of PHSPA significantly differs from the legislation involved in *Tennessee Valley Auth.*

In the absence of language expressly indicating a legislative intent to abrogate or nullify the prior planning process, contractual agreements, land acquisition and construction undertaken by the City, or the prior state and federal approvals obtained by the City for such project, we do not interpret the PHSPA as requiring additional planning or authorization for such project. Accordingly, we conclude that the district court should have granted the City's motion for summary judgment and dismissed Count II of the complaint. Our resolution of the above issues makes it

---

**2.** *See also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (discussing whether NEPA is to be construed retroactively); *Pennsylvania Envtl. Council, Inc. v. Bartlett*, 454 F.2d 613 (3d Cir. 1971) (federal prehistoric and historic protection statutes treated as interchangeable). The court in *Bartlett* considered and rejected an argument similar to that advanced by petitioners herein. The court held that NEPA, which became effective on January 1, 1970, did not invalidate the prior action of the Secretary of Transportation approving a grant-in-aid for a highway construction project. A like issue was also considered in *Robinswood Community Club*. Federal and state authorities had obtained approval for the design and location of a highway construction project prior to the effective date of NEPA. The appellate court affirmed the trial court, determining that NEPA was not applicable when final design approval had been secured prior to the effective date of the act and where the subsequent construction did no more than carry out the previously approved design.

**3.** We do not find that the NEPA cases provide direct precedent to hold that the date of final approval is the appropriate moment for the retrospective application of PHSPA. However, the NEPA cases are useful to illustrate the court's focus on the intent of the legislature and the public policy considerations in interpreting the statute. NEPA is directed solely toward federal government agencies involved in "major Federal actions" which may affect the environment. Once the Secretary of Transportation had given final design approval, the Secretary's participation in the process was virtually complete. Thus, the point of final approval was found to represent a point of final participation by the Secretary in the federal action. *See Morris County Trust for Historic Preservation v. Pierce*, 714 F.2d 271 (3d Cir.1983) (HUD required to conform to NEPA's requirements even though approval occurred before the effective date of NEPA, due to the fact that HUD remained meaningfully involved with the project after the effective date of NEPA).

unnecessary to address the remaining matters raised by the City.

The cause is remanded with directions to vacate the injunction and for further proceedings consistent with this opinion.

The City is awarded its costs on appeal.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.