# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **JANUARY 14, 2015**

**NO. 33,446**

**FRANK C. DI LUZIO,**

Worker-Appellee/Cross-Appellant,

v.

**CITY OF SANTA FE, self-insured,**

Employer-Appellant/Cross-Appellee.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellee/Cross-Appellant

French & Associates
Katherine E. Tourek
Albuquerque, NM

for Appellant/Cross-Appellee

**OPINION**

**FRY, Judge.**

{1} This case is on appeal from a workers' compensation judge's (WCJ) order granting Worker, a former City of Santa Fe firefighter, total disability benefits under the New Mexico Occupational Disease Disablement Law (Occupational Disease Act), NMSA 1978, §§ 52-3-1 to -60 (1945, as amended through 2013), following his diagnosis with mantle cell non-Hodgkin's lymphoma. On appeal, Employer argues that application of Section 52-3-32.1, which creates a rebuttable presumption that certain diseases were proximately caused by firefighting, to these facts constitutes a retroactive application of the statute. Employer further argues that the Occupational Disease Act still requires firefighters to establish with medical probability that their disease was caused by firefighting and that Worker failed to do so. Finally, Employer argues that it should be allowed to rebut the causation presumption with evidence that non-Hodgkin's lymphoma is not caused by firefighting. Worker cross-appeals arguing that the WCJ erred in calculating the rate of disability benefits he is owed.

{2} In regard to Employer's arguments, we conclude that because Worker met the statutory prerequisites to be entitled to the presumption that his disease was the result of his years of service as a firefighter, he was not required to establish that his disease was causally connected to his employment. Further, because Employer did not

present evidence that Worker's disease was the result of conduct or activities outside his employment, we conclude that Employer failed to rebut this presumption. *See* § 52-3-32.1(C). Finally, we conclude that application of Section 52-3-32.1 to these facts does not constitute a retroactive application of the statute. Accordingly, we affirm the WCJ on these bases. In regard to Worker's cross-appeal, we conclude that the WCJ erred in calculating the compensation amount due Worker by failing to take into account the date that Worker became disabled. Accordingly, we reverse and remand on this point.

**BACKGROUND**

{3}     Worker began working as a firefighter/paramedic for the City of Santa Fe in 1979. He remained with the fire department until 2000. During his twenty-one-year career with the fire department, Worker served in a variety of roles, including shift commander, captain of emergency services, division chief, deputy fire chief, and fire chief. Worker testified that at all times during his career with the fire department, he actively fought or attended fires approximately two times per week.

{4}     Following his career as a firefighter, Worker briefly served as the Santa Fe City Manager. After leaving employment with the City of Santa Fe, Worker worked in other occupations before becoming employed with the New Mexico Children, Youth and Families Department (CYFD). Worker was working as a supervisor for the

2

employee relations bureau at CYFD in January 2012 when he was diagnosed with mantle cell non-Hodgkin's lymphoma. Due to his illness, Worker accepted a demotion in November 2012 from supervisor to employee relations specialist and began working increasingly reduced hours. Worker subsequently resigned from employment with CYFD in June 2013 due to his inability to continue working.

{5} Worker timely filed his complaint for benefits in June 2012. The WCJ determined that Worker was entitled to a presumption that his disease was proximately caused by his years of service as a firefighter because, under Section 52-3-32.1, non-Hodgkin's lymphoma is an identified disease and Worker served more than fifteen years as a firefighter. *See* § 52-3-32.1(B)(5). The WCJ determined that Worker became physically unable to work in January 2012. Among other relief, the WCJ awarded Worker $480.47 per week in total disability benefits for a maximum of 700 weeks. Employer now appeals the WCJ's determination that Worker was entitled to the presumption that his service as a firefighter proximately caused his disease and Worker cross-appeals the basis of the WCJ's award of benefits.

**DISCUSSION**

**Standard of Review**

{6} We begin with Employer's arguments regarding the WCJ's application of the firefighter occupational disease statute before considering Worker's argument

3

regarding the calculation of disability benefits. Both parties' arguments require us to interpret the provisions of the Occupational Disease Act. Statutory interpretation is a question of law that we review de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.

{7} "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350. General principles guide our construction of statutes. First, the "plain language of [the] statute is the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). Second, we will not read into the statute language that is not there, particularly if it makes sense as written. *Id.* And finally, if "several sections of a statute are involved, they must be read together so that all parts are given effect." *Id.*

**The Firefighter Occupational Disease Statute Exempts Firefighters in Some Circumstances From Having to Establish That Firefighting Was the Proximate Cause of Their Disease**

{8} The Occupational Disease Act requires a worker to show a "direct causal connection between the conditions under which the work is performed and the occupational disease" in order to recover benefits. Section 52-3-32. Where an

4

employer denies that the "occupational disease is the material and direct result of the conditions under which work was performed, the worker must establish that causal connection as a medical probability by medical expert testimony." *Id.*

{9}     The firefighter occupational disease statute, on the other hand, exempts firefighters in certain situations from the burden of establishing a causal connection between their disease and their duties as firefighters. Section 52-3-32.1. The statute states, "If a firefighter is diagnosed with one or more of the following diseases after the period of employment indicated, . . . the disease is presumed to be proximately caused by employment as a firefighter[.]" Section 52-3-32.1(B). In the case of a firefighter developing non-Hodgkin's lymphoma, the disease is presumed to be proximately caused by the firefighter's occupation after fifteen years of service. Section 52-3-32.1(B)(5).

{10}     Employer argues that, notwithstanding the firefighter occupational disease statute, the Occupational Disease Act still requires a firefighter to prove medical causation. Thus, Employer argues that because Worker did not establish with a reasonable degree of medical probability that his disease was caused by his years of firefighting, he should be barred from receiving disability benefits.

{11}     Employer's argument misses the mark. As noted above, the Occupational Disease Act places a burden on workers to prove that their disease was proximately

5

caused by the hazards of their employment. Section 52-3-32. The statute requires workers to prove the causal connection between their occupation and disease "as a medical probability by medical expert testimony." *Id.* However, when the Legislature enacted 52-3-32.1 and stated that certain diseases suffered by firefighters would be "presumed to be proximately caused by employment as a firefighter," it made clear that in some circumstances a firefighter would be exempted from the requirement of establishing the causal connection between certain diseases and the hazards of firefighting, although that presumption is rebuttable. Section 52-3-32.1(B). Thus, Section 52-3-32.1 essentially reverses the usual burden of proof under the Occupational Disease Act for a narrow class of workers for public policy reasons.

{12} These public policy reasons center around the legislative recognition of the difficulty a firefighter would have, given the various hazards and toxins firefighters are exposed to, of establishing the causal connection between firefighting and his or her disease. *City of Littleton v. Industrial Claim Appeals Office*, 2012 COA 187, ¶ 37, ___ P.3d ___, 2012 WL 5360912 (stating that a firefighter is disadvantaged in proving causation because "[t]here is no way to know which substances the firefighter encountered at which fire; and even if there were, there is no way to determine the dose, frequency, and duration of exposures"). As the WCJ found:

> In the course of fighting fires, firefighters may be exposed to harmful
> substances. At the fire scene, firefighters are potentially exposed to

6

various mixtures of particulates, gases, mists, fumes of an organic and/or inorganic nature[,] and the resultant pyrolysis products.

A firefighter attempting to causally connect the number and degree of exposures to these various toxins over the course of his or her career to a specific disease would therefore be presented with a formidable barrier to recovery. *Wanstrom v. N.D. Workers Comp. Bureau*, 2001 ND 21, ¶ 7, 621 N.W.2d 864, 867 (stating that a similar statute's "purpose is to relieve firefighters of the nearly impossible burden of proving firefighting actually caused their disease").

{13}     *Estate of George v. Vermont League of Cities and Towns*, is instructive on this point. 2010 VT 1, 187 Vt. 229, 993 A.2d 367. In *Estate of George*, the estate of a firefighter who died of non-Hodgkin's lymphoma brought a workers' compensation action. *Id.* ¶ 3. Without the benefit of a statutory presumption similar to Section 52-3-32.1, the firefighter's claim in *Estate of George* failed because "[t]here was . . . no evidence as to the frequency of exposure or types of exposures that [the] claimant may have had." 2010 VT 1, ¶ 3, 187 Vt. 229, 993 A.2d 367. It is this type of result, which would likely repeat itself in nearly every Occupational Disease Act case brought by a firefighter, that likely led the Legislature to reverse the burden of proof for causation in favor of firefighters.

{14}     For these reasons, Employer's reliance on statements in *Castillo v. Caprock Pipe & Supply, Inc.*, indicating that the disease "must be one due wholly to causes and

7

conditions which are normal and constantly present and characteristic of the particular occupation" is inapposite to our conclusion. 2012-NMCA-085, ¶ 5, 285 P.3d 1072 (internal quotation marks and citation omitted). These statements in *Castillo* interpret the proximate causation requirement embodied in Section 52-3-32. *See Castillo*, 2012-NMCA-085, ¶ 4. By enacting the firefighter occupational disease statute, the Legislature adopted a statutory presumption that the development of non-Hodgkin's lymphoma by a firefighter is linked to his or her service in that role under certain circumstances. Employer's reliance on *Castillo* and argument that Worker failed to show that his disease "was particular to firefighting" fails to account for this statutory presumption.

{15}     Finally, our conclusion is buttressed by the inclusion of a provision stating that when one of the presumptions does not apply, a firefighter is not precluded from "demonstrating a causal connection between employment and [the] disease or injury." Section 52-3-32.1(E). This provision would be redundant if a firefighter was still required to prove a causal connection even where one of the presumptions applied. Thus, we conclude that when a firefighter establishes that he or she is suffering from one or more of the diseases listed in Section 52-3-32.1(B) and that the firefighter served the requisite number of years, subject to any other requirements under Section

8

52-3-32.1(B), the firefighter is entitled to the presumption—albeit rebuttable—that the disease was caused by his or her employment as a firefighter.

**Employer Failed to Rebut the Presumption That Worker's Disease Was Causally Connected to Firefighting**

{16}    Section 52-3-32.1(C) states that "[t]he presumptions created in Subsection[s] B and D of this section may be rebutted by a preponderance of evidence . . . showing that the firefighter engaged in conduct or activities outside of employment that posed a significant risk of contracting or developing a described disease." We understand Employer's argument to be that it should be allowed to rebut the presumption with evidence showing a tenuous link between firefighting and the development of non-Hodgkin's lymphoma.

{17}    Employer's argument, however, attacks the statutory presumption itself that occupational hazards relating to firefighting can cause non-Hodgkin's lymphoma instead of rebutting the presumption with evidence that Worker's non-Hodgkin's lymphoma was caused by "conduct or activities outside of employment [by Worker] that posed a significant risk of contracting or developing [the] disease." *Id.*; *see Medlin v. Cnty. of Henrico Police*, 542 S.E.2d 33, 39 (Va. Ct. App. 2001) (holding in regard to a similar statute that "evidence that merely rebuts generally the underlying premise of the statute, which establishes a causal link between stress and heart disease, is not probative evidence for purposes of overcoming the

9

presumption"). Because the statutory presumption represents a legislative determination that there is a causal connection between firefighting and the development of non-Hodgkin's lymphoma, no amount of evidence regarding a possibly tenuous link between non-Hodgkin's lymphoma and firefighting is probative to rebut the presumption. Such a determination must come from legislative amendment, not judicial fiat. In this case, Employer did not put forth evidence of other activities or conduct by Worker outside of his employment that posed a significant risk of him contracting this disease. Accordingly, we conclude that Employer failed to rebut the presumption that Worker's disease was causally connected to his years of service as a firefighter.

**Applying the Presumption to This Case Does Not Constitute a Retroactive Application of the Statute**

{18} Section 52-3-32.1(A) defines a "firefighter" as "a person who is employed as a full-time non-volunteer firefighter by the state or a local government entity and who has taken the oath prescribed for firefighters." This statute became effective in 2010. Worker, although no longer working with the fire department, became disabled in 2012 and shortly thereafter filed his claim for disability benefits. Employer argues that because Worker was not working as a firefighter at the time the firefighter occupational disease statute was enacted, his use of the statute constitutes a

retroactive application of the statutory presumption. Thus, Employer argues that the statute applies only to firefighters employed at the time the statute went into effect.

{19} We disagree with Employer that application of the presumption in this case constitutes a retroactive application of the statute. "It is well settled that a statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to the enactment." *Hansman v. Bernalillo Cnty. Assessor*, 1980-NMCA-088, ¶ 20, 95 N.M. 697, 625 P.2d 1214 (internal quotation marks and citation omitted). The fact that Worker's employment with the fire department occurred before the enactment of Section 52-3-32.1 is not determinative of whether Worker is entitled to the statutory presumption.

{20} We therefore disagree with Employer's argument that the Legislature's use of the word "is" in the definition of "firefighter" evidences an intention by the Legislature to limit the presumption to those firefighters working as firefighters at the time of the statute's enactment. The operative context of the definition is to distinguish between firefighters employed by a state or local government and volunteer firefighters, not to limit the statutory presumption to firefighters employed at the time of its enactment. Section 52-3-32.1(A). Furthermore, the periods of employment necessary to be entitled to the presumption indicate the Legislature's awareness of the significant latency period between exposure to harmful toxins and

11

the development of the diseases listed. Section 52-3-32.1(B) (requiring between five to fifteen years of employment, depending on the disease contracted). Construing the statute as Employer argues would mean, in some circumstances, a similar significant delay between the statute's enactment and the "first wave," so to speak, of firefighters being able to utilize the presumption. This leads us to conclude that the Legislature intended that firefighters who became disabled due to one of the occupational diseases listed were entitled to the presumption—subject, of course, to the other statutory requirements—even if their terms of employment concluded before the statute's enactment.

{21} This conclusion is supported by the policy underlying our presumption against retroactive application of statutes. "The presumption is premised upon policy considerations that individuals, in planning and conducting their business, should be able to rely with reasonable certainty on existing laws." *City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque*, 1991-NMCA-015, ¶ 37, 111 N.M. 608, 808 P.2d 58. This statute did not affect the underlying employment relationship between the firefighter and his or her employer. It only affects the burdens of proof between the respective parties should a firefighter file for disability benefits. As a result, because Worker filed for benefits two years after the statute's enactment, thus implicating the statute, Employer was aware at the outset of this litigation what its

respective burden was. That is, it knew throughout the course of the litigation that Worker could be entitled to the statutory presumption that his disease was caused by his work as a firefighter but that it could produce evidence that Worker's disease was caused by conduct or activities outside his employment. *See* § 52-3-32.1(B), (C). Thus, the relevant inquiry for determining whether the statute was being applied retroactively or prospectively is not whether the firefighter was employed as a firefighter at the time of the statute's enactment but rather whether the statute was in existence at the time the firefighter filed for disability benefits. Because Worker filed for disability benefits two years after the statute's enactment, application of the statute was not retroactive.

**The WCJ Misapplied Section 52-3-14 in Calculating the Amount Due Worker**

{22} Worker argues that the WCJ erroneously calculated the amount of compensation he should be awarded. We agree.

{23} Section 52-3-14(B) states that "[f]or total disablement, the employee shall receive sixty-six and two-thirds percent of his average weekly wage, not to exceed . . . a maximum of one hundred percent of the average weekly wage in the state, a week . . . during the period of such disablement." Compensation "paid or payable during [an] employee's entire period of disablement shall be based on and limited to the benefits in effect on the date of the occurrence of the disablement." *Id*. The WCJ

stated, however, that "[p]ursuant to Section 52-3-14 wages utilized for determining disability benefits are to be based upon the date of the occurrence" instead of the "date of the occurrence of the disablement." The WCJ found that Worker's "last occurrence as a firefighter was in 2000" and therefore used the maximum weekly compensation rate for 2000 of $480.47.

{24}    The WCJ's calculation was incorrect given the language omitted from the statute in the WCJ's order. The WCJ determined that Worker became disabled in January 2012. Therefore, this should have also been the date that the WCJ determined was the "date of the occurrence of the disablement." Nowhere does the statute state that the date of last employment or date of last injurious exposure to the hazards of the employment is to be used in calculating the amount of the Worker's disability benefits. *Compare* § 52-3-14(B) (stating that compensation "paid or payable during [an] employee's entire period of disablement shall be based on and limited to the benefits in effect on the date of the occurrence of the disablement"), *with* § 52-3-11 ("Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was last injuriously exposed to the hazards of employment."). By way of counterpoint, under the Workers' Compensation Act, benefits are calculated according to the "date of the accidental injury resulting in the disability or death." NMSA 1978, § 52-1-48 (1989).

14

This difference between the two statutes may result from a legislative recognition of the latency period of occupational diseases, which may not manifest until many years after the "injurious exposure." Accordingly, the January 2012 date of disablement shall be used in determining Worker's compensation rate.

**CONCLUSION**

{25}    For the foregoing reasons, we affirm the order awarding Worker benefits, reverse the calculation of benefits, and remand for proceedings consistent with this Opinion.

{26}    **IT IS SO ORDERED.**


_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**MICHAEL E. VIGIL, Judge**

15