**STATE of Alaska, ALCOHOLIC BEVERAGE CONTROL BOARD, Appellants,**

v.

**ODOM CORPORATION, Alaska Distributors Co., Appellees.**

**No. 7137.**

Supreme Court of Alaska.

Sept. 23, 1983.

David T. LeBlond, Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellants.

Edward Miner, Bogle & Gates, Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and HANSON, Judge.*

## OPINION

HANSON, Judge.

### FACTS AND PROCEEDINGS

This case arises out of a dispute over the amount of license fees owed for 1980 by two liquor wholesalers.

The Odom Corporation and Alaska Distributors Co. are wholesale licensees who hold six and three licenses respectively. The Alcoholic Beverage Control Board (ABC) is an administrative agency empowered to control alcoholic beverages under AS 04.06.090(a).

The license fee due on February 28 of each year is determined by the volume of business transacted in the previous calendar year. Chapter 131, SLA 1980 (AS 04.11.-160), which became effective on July 1, 1980, amended the fee schedule. Under the repealed AS 04.10.110(a) (1957) there was a maximum fee of $5,000 payable if revenue under a given license exceeded $500,000.[1] Under the new statute, a maximum fee of $10,000 applies when the amount of business exceeds $1,000,000. AS 04.11.160(a) (1980).[2]

At the end of 1980, Odom and Alaska Distributors were assessed taxes accrued for the prior year based on the new fee rate. Both companies paid the tax under protest and then filed suit for a declaratory judgment as to the proper amount owed and a refund of overpayments. The plaintiffs contend that it was unlawful for ABC to apply the increased fee schedule retroactively.

The parties have stipulated that the gross sales revenue for 1980 under each license held by each plaintiff exceeded $1,000,000.

July 26, 1982, the superior court granted summary judgment in favor of Odom and

---

* Hanson, Superior Court Judge, sitting by assignment made pursuant to Article IV, Section 11 of the Constitution of Alaska.

1. AS 04.10.110(a) (1957) reads:

   *Wholesale License.* (a) The holder of a general wholesale license may sell intoxicating liquors in the original package, and wine in bulk, in quantities of not less than five wine gallons to holders of licenses. The holder of a general wholesale license may not sell to a consumer. Liquor requiring internal revenue strip stamps shall have the stamps intact on the package. A general wholesale license shall be required for each distributing point. The general wholesale license fee schedule is based upon the total amount of business transacted during any year and is $500 as a minimum license fee, to accompany the application, and in payment of the fee for the first $50,000 of business transacted, and, in addition thereto, on the business transacted during any year,

   | | |
   |---|---|
   | above $50,000 and not over $ 75,000 | a fee of $250 |
   | above $75,000 and not over $100,000 | a fee of $500 |
   | above $100,000 and not over $125,000 | a fee of $750 |
   | above $125,000 and not over $150,000 | a fee of $1000 |
   | above $150,000 and not over $175,000 | a fee of $1250 |
   | above $175,000 and not over $200,000 | a fee of $1500 |
   | above $200,000 and not over $250,000 | a fee of $2000 |
   | above $250,000 and not over $300,000 | a fee of $2500 |
   | above $300,000 and not over $350,000 | a fee of $3000 |
   | above $350,000 and not over $400,000 | a fee of $3500 |
   | above $400,000 and not over $500,000 | a fee of $4500 |
   | above $500,000 | a fee of $5000 |

2. AS 04.11.160(a) (1980) reads:

   *Wholesale Licenses.* (a) A general wholesale license authorizes the holder to sell alcoholic beverages in the original package, and wine in bulk, in quantities of not less than five gallons. A holder of a general wholesale license may not sell to a person not licensed under this title, except as provided in AS 04.21.040. A holder of a general wholesale license may not sell alcoholic beverages unless any stamps required to be affixed to the package by state or federal law are intact on the package. A wholesaler must obtain a general wholesale license for each distributing point. The annual general wholesale license fee is $1,000 for the first $100,000 of business transacted, payable at the time of making an original application or an application for renewal. In addition, the following annual fees shall be paid by a holder of a general wholesale license:

   | Business Transacted During Year | Fee |
   |---|---|
   | over $100,000 and not over $150,000 | $ 500 |
   | over $150,000 and not over $200,000 | $ 1,000 |
   | over $200,000 and not over $250,000 | $ 1,500 |
   | over $250,000 and not over $300,000 | $ 2,000 |
   | over $300,000 and not over $350,000 | $ 2,500 |
   | over $350,000 and not over $400,000 | $ 3,000 |
   | over $400,000 and not over $500,000 | $ 4,000 |
   | over $500,000 and not over $600,000 | $ 5,000 |
   | over $600,000 and not over $700,000 | $ 6,000 |
   | over $700,000 and not over $800,000 | $ 7,000 |
   | over $800,000 and not over $1,000,000 | $ 9,000 |
   | over $1,000,000 | $10,000 |

Alaska Distributors. In that court's view the licensees owed the sum of one-half of the maximum fee payable under the prior statute plus one-half of the maximum fee payable under the new schedule, or $7,500. ABC appeals that decision, contending that the assessed fee of $10,000 per license was correct.[3]

ABC argues, first, that AS 04.11.160 can be applied retrospectively, and second, that imposing a tax of $10,000 would not entail retrospective application.

ABC contends that a fee of $10,000 per license can be reached if the new schedule is applied solely to the period from July 1—December 31, 1980. According to ABC's reasoning, liability of $5,000 per license was incurred prior to July 1 under the old statute if the licensees had already exceeded $500,000 in sales by that date. Sales during the second six months apparently exceeded the amount necessary to justify imposing the $10,000 maximum fee under the new law. But, since $5,000 was already due under the old law, the most that could be assessed for the second half of the calendar year was $5,000 so that the total owed would not exceed the $10,000 maximum imposed by the new law.

## RETROACTIVITY

As 01.10.090 provides that no Alaskan statute can be applied retrospectively "unless expressly declared therein." This statute has been applied strictly. *See e.g., State v. First National Bank of Anchorage,* 660 P.2d 406, 418 (Alaska 1982); *Stephens v. Rogers Construction Co.,* 411 P.2d 205, 208 (Alaska 1966); *Hill v. Moe,* 367 P.2d

739, 742 (Alaska 1961), *cert. denied,* 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962). Had the legislature stated expressly that it intended the revised fee schedule to be retroactive to January 1, 1980, we have no doubt that such retroactivity would be permissible. *See United States v. Hudson,* 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370 (1937), in which the U.S. Supreme Court stated:

> As respects income tax statutes it has long been the practice of Congress to make them retroactive for relatively short periods so as to include profits or transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this court have recognized this practice and sustained it as consistent with the due process of law clause of the Constitution.

299 U.S. at 500, 57 S.Ct. at 310. It would have been simple for the legislature to have included in the amendment a statement that the new rates would apply to revenues collected in the 1980 calendar year. No such statement was made.[4] Therefore, the new fee schedule cannot be applied to revenues collected prior to the effective date of AS 04.10.340.

We do, however, agree with the contention by ABC that the $10,000 maximum license fee can be reached without resorting to retrospective application and find no retroactivity at work in the state's demand for a $10,000 fee per license.

## METHOD OF CALCULATION

While we agree that the method of calculation proposed by the State—$5,000

---

**3.** We note that the new maximum is actually $11,000 ($10,000 limit on graduated fee schedule plus $1,000 initial lump sum payable upon license renewal) and that the licensees have only paid $500 in advance pursuant to the dictates of the prior statute. However, since neither licensee has been assessed for this additional $500, we will not consider the inclusion in the relief granted. *Cf. Bordenelli v. United States,* 233 F.2d 120 (9th Cir.1956) (distinguishing between judicial and administrative functions and holding that in the Territory of Alaska, duties associated with the licensing of alcohol distributors were the proper function of an administrative board rather than the courts, in the first instance).

**4.** The state also argues for retroactivity under AS 01.10.020. That section states that general rules of statutory construction are inapplicable when the result would be inconsistent with the "manifest intent of the legislature." Although AS 01.10.020 has been interpreted to modify "[t]he iron-clad language" of AS 01.10.090, *City and Borough of Juneau v. Commercial Union Insurance Co.,* 598 P.2d 957, 958 n. 3 (Alaska 1979), in our view, the statutory scheme before us is not sufficiently clear to satisfy AS 01.10.020.

prior to July 1, 1980 and $10,000 thereafter but with a $10,000 maximum—does not run afoul of retroactivity, we believe it more appropriate to simply ignore the business conducted before July 1, 1980. Since the assertion by the State that at least $1,000,-000 of business was conducted under each license in the second half of the year has not been refuted, we may assume that it is true. Therefore, the maximum fee of $10,-000 sought by ABC is justified. Accordingly, this case is remanded to the superior court for entry of judgment in favor of the State holding that $10,000 per license is due.

REVERSED and REMANDED.

RABINOWITZ, Justice, concurring in part, and dissenting in part.

I agree that AS 04.11.160(a) (1980) should not be applied retroactively. However, I disagree with the court that a $10,000 fee can be imposed without applying the statute retroactively. The majority treats a six-month period as a year for purposes of calculating the allowable maximum fee. The defect in this approach is revealed by the fact that although Odom was operating under a fee schedule for the first half of 1980 which had a lower maximum transaction base (one which left untaxed all revenues exceeding $500,000), it is nonetheless required by the decision today to pay fees equal to those which would have been imposed had the new statute (which taxes revenues between $500,000 and $1,000,000) applied the entire year. By dividing the fee-year in half and imposing the maximum *annual* fee permissible under the new statute, the majority opinion denies Odom the benefit of the lower ceiling on fees in effect during the first half of 1980 under former AS 04.10.110(a), *de facto* applying AS 04.-11.160(a) retroactively. This retroactivity problem could only have been avoided by halving the maximum allowable fee for each six-month period and adding these sums together. This was the approach taken by the superior court. Therefore, I would affirm.