**Emmet E. NORTON and Frances G. Norton, Appellants,**

v.

**ALCOHOLIC BEVERAGE CONTROL BOARD of the State of Alaska, Alaska Bartenders Pension Trust, Alaska Bartenders Health and Welfare Trust, James G. Hayes and Bernice Hayes, Appellees.**

**No. 7363.**

Supreme Court of Alaska.

March 1, 1985.

Nancy R. Gordon, Bernd C. Guetschow, Anchorage, for appellants.

Charles A. Dunnagan, Jermaine, Dunnagan & Owens, Peggy Alayne Roston, Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

---

OPINION

COMPTON, Justice.

This case requires us to determine which of two conflicting statutes governs the transactions at issue. One statute prohibits the Alaska Alcoholic Beverage Control Board (hereafter ABC or Board) from approving liquor license transfer applications when a creditor of the transferor has not received payment or security for payment of a debt. This statute was repealed and replaced by a new statute permitting transfer in the above situation if the application is pursuant to an earlier transfer whereby the parties thereto agreed that the license would be retransferred in the event of a default. The superior court, sitting as an appellate court pursuant to AS 22.10.020 and Appellate Rule 602, held that the repealed statute applied, thereby reversing a decision of the Board. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Emmet and Frances Norton (Nortons) sold a business known as The Party House to Robert and Inez Unger (Ungers) and Robin Enterprises, Inc. (Robin) in July 1976. A liquor license was included in the sale. To secure payment of the purchase price, Robin and the Ungers signed a promissory note and executed a UCC Security Agreement on all of the property sold, including the license. The Nortons were given special power of attorney to retransfer the license from the Ungers to themselves in the event the Ungers defaulted in the performance of their agreement. A blank liquor license transfer application was included in the sale.

Also in July 1976 the Ungers obtained a ten-year lease on the real property upon which The Party House was located. James and Bernice Hayes (Hayeses), lessors, had no security interest in the liquor license but they had certain contractual remedies in the event of default in rent payments.[1]

Over the next several years the Ungers incurred debts as a result of their operation of The Party House. They failed to make employee contributions pursuant to their collective bargaining agreement with the Alaska Bartenders Pension Trust and Bartenders Health & Welfare Trust (Union). The Union eventually obtained a judgment on August 6, 1979 for $12,932.50. The Ungers also defaulted on their rent obligations. The Hayeses obtained a $25,819.50 judgment on May 19, 1981. Lastly, the Ungers were in debt to the Nortons in the amount of $122,620.31 plus interest.

As a result of the Ungers' debt, the Nortons declared a default. On August 1, 1980, they exercised their special power of attorney and filed for retransfer of the liquor license with the Board.

The Board initially denied the transfer request, pursuant to AS 04.10.330(b), on the ground that certain creditors were unpaid. The Nortons contested the denial and a hearing officer was appointed to consider the matter. The hearing officer concluded that a newly enacted statute, AS 04.11.360(4)(B), governed ABC's approval of the transfer. The Board subsequently voted in favor of the transfer. The Hayeses and the Union appealed the approval to the superior court. The court reversed the Board's approval. This appeal followed.

## II. RETROSPECTIVE APPLICATION

At the time of the 1976 transactions, AS 04.10.330(b) governed ABC approval of liquor license transfers. This statute provides in part that

[T]he board shall not approve the application for transfer [of a license] unless all of the debts and taxes are paid, or the transferor gives security for the payment of them satisfactory to the creditor or taxing authority prior to approval of the application.

1. The remedies include the following: the right to cancel the lease; the right to re-enter the premises and remove the Ungers' property; and the right to re-let the property and receive payment for damages.

Since the Hayeses and the Union had not been satisfied at the time of the retransfer application, this statute would require that the ABC deny the application.

On July 1, 1980, however, this statute was repealed and AS 04.11.360 enacted.[2] Section (4)(B) of the new statute provides that a transfer request must be denied if all debts are not paid unless

the transfer is pursuant to a promise given as collateral by the transferor to the transferee in the course of an earlier transfer of the license under which promise the transferor is obliged to transfer the license back to the transferee in the event of default in payment for property conveyed as part of the earlier transfer of the license.

If this statute were to apply to the Nortons' retransfer application, Board approval would be proper.

■ The dispositive issue is whether AS 04.11.360 operates retrospectively in violation of AS 01.10.090.[3] Since this issue is one of statutory interpretation, the proper standard of review is the substitution of judgment test. *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979).

A plain reading of AS 04.11.360 makes it applicable to all transfer requests made after the enactment of the statute. It does not, however, expressly declare that the exception noted in section (4)(B) is to be applied to pre-enactment debts. If such an application is classified as a retrospective application, AS 01.10.090 would be violated. Thus, the first step is to recognize some distinctions between prospective and retrospective application of a statute.

In broad terms "a prospective statute ... operates on conduct, events, and circumstances which occur after its enactment" while a retrospective statute "operate[s] on transactions which have occurred or rights and obligations which existed before passage of the act." 2 C. Sands, Sutherland Statutory Construction § 41.01, at 245 (4th ed. 1973) (footnote omitted). These definitions are so broad that, as Sutherland points out, "[m]any statutes are in various respects both prospective and retrospective. Characterization thus may do nothing more than reflect a judgment concerning validity or interpretation, arrived at on other grounds." § 41.01 at 245. Indeed, AS 04.11.360(4)(B) fits that mold.

In narrower terms, Black's Law Dictionary 1480 (rev. 4th ed. 1968) defines a retrospective law as "[e]very statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." (Citations omitted). In the superior court, the parties argue and the court determined the case using a "vested" or accrued rights analysis.

A "vested rights" analysis, however, is not particularly useful in the context of this case. That phrase is not ordinarily used in determining whether a statute is retrospective; rather it is traditionally used in determining whether a retrospective statute is unconstitutional.[4] Even when employed in the latter context it is regarded by commentators as unhelpful to analysis: "[I]t has long been recognized that the term 'vested rights' is conclusory—a right

---

**2.** The statute was amended to remedy inequities in AS 04.10.330(b). In *C.Y., Inc. v. Brown,* 574 P.2d 1274, 1277 (Alaska 1978), we noted that section 330(b) required that all creditors be paid prior to transfer approval. We also stated, however, that "[t]he one instance in which the foregoing result seems harsh is the one presented in this case. It would seem that the seller of a liquor license should be afforded greater protection than that given to subsequent creditors of his transferee by AS 04.10.330."

**3.** AS 01.10.090 reads: "No statute is retrospective unless expressly declared therein."

**4.** *See Bidwell v. Scheele,* 355 P.2d 584, 586 (Alaska 1960) (Vested property rights are protected against state action by the provisions of the Fourteenth Amendment of the Constitution of the United States and by sec. 7 of art. I of our state constitution); *see also Ewell v. Daggs,* 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682 (1883) and *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885).

is vested when it has been so far perfected that it cannot be taken away by statute."[5]

 It is especially problematic to use "vested rights" as a determinant of retrospectivity. Not only is the term unhelpful in itself, it also bears no relationship to the generally accepted meaning of retrospective, which, as defined in Webster's Third New International Dictionary (1968), is "affecting things past." Further, if "vested rights" defines both when a law is retrospective and when a retrospective law is unconstitutional, no middle ground is left for retrospective laws that are constitutional. That a middle ground was contemplated by the legislature is obvious, for AS 01.10.090 speaks of an express declaration of retrospectivity. Additionally, retrospective legislation is not in and of itself unconstitutional.[6]

 The second step is to determine a straightforward definition of retrospectivity as that concept is used in AS 01.10.090. The following definition is appropriate: "A retroactive [retrospective] statute is one which gives to pre-enactment conduct a different legal effect from that which it would have had without the passage of the statute." Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 692 (1960).

Using this definition, the 1980 statute clearly is being given retrospective effect if applied to the 1976 transactions. But for the new statute, payment to pre-enactment creditors would have been necessary in order to effect a transfer.

 The reason for the statutory presumption against retrospective legislation is that people in conducting their business should be able to rely on existing laws with reasonable certainty. In the present case, a creditor of a liquor license holder would extend credit knowing that the liquor license could not be transferred until the creditor was paid, providing a form of security for the extension of credit.[7] To eliminate this security is to run counter to the reasonable expectations of the parties.

 For these reasons, we conclude that applying the 1980 statute to pre-enactment creditors is a retrospective application of the statute which violates both the literal terms of and the reasons for AS 01.10.090. AS 04.10.330(b) is applicable to the retransfer.

AFFIRMED.

---

5. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L.Rev. 692, 696 (1960); *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1081 (1st Cir.1977); *Fairfax Nursing Center, Inc. v. Califano,* 590 F.2d 1297, 1302 (4th Cir.1979); *Rothman v. Rothman,* 65 N.J. 219, 320 A.2d 496, 499 (1974); *Application of Santore,* 28 Wash. App. 319, 623 P.2d 702, 706 (1981); *State ex rel. Briggs & Stratton v. Noll,* 100 Wis.2d 650, 302 N.W.2d 487, 494 (Abrahamson, J., dissenting) (1981).

6. "Yet the contract clause does not prohibit the state ... from enacting legislation with retroactive effects." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92, 106 (1977); *FHA v. The Darlington, Inc.,* 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132, 137 (1958).

7. Indeed, the parties stipulated that the Hayeses relied on the existence of AS 04.10.330(b) when entering into the lease agreement.