EASTWIND, INC., an Alaskan corporation; M–B Contracting, Co., Inc., a foreign corporation; Wilder Construction Co., Inc., a foreign corporation; H & H Contractors, Inc., an Alaskan corporation; and Quality Asphalt Paving, Inc., an Alaskan corporation, Appellants,

v.

STATE of Alaska, Department of Labor, Wage and Hour Administration, Appellee.

No. S–6914.

Supreme Court of Alaska.

Dec. 26, 1997.

Mary L. Pate, Eide & Miller, Anchorage, for Appellants.

Toby N. Steinberger, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

## I.  INTRODUCTION

At issue in this appeal is whether the new wage rate determination provisions of the 1993 amendments to AS 36.05.010 apply to public construction contracts bid on prior to the effective date of the amendments.  We hold that they do not.

## II. FACTS AND PROCEEDINGS

Effective September 22, 1993, the legislature amended AS 36.05.010, the Little Davis–Bacon Act (Act).[1] Prior to amendment the Act required that all contractors with public works contracts pay their employees no less than the prevailing wage rate for work of a similar nature in the relevant locale. Alaska Statute 36.05.010 specifically directed contractors to adjust their wage rates every time that the Department of Labor (DOL) issued new prevailing wages.[2] Thus, by contract, a public works contractor agreed to immediately adjust employee wages for the subsequent pay period after each DOL issuance of new prevailing wage rates.[3]

In 1993, the legislature amended AS 36.05.010 and AS 36.05.070. Under the system established by the 1993 amendments, which became effective September 22, 1993, minimum wages are fixed at the prevailing wage rates in effect ten days prior to the final date for submission of bids on the public contract. These wage rates remain constant for twenty-four months or the life of the contract, whichever is shorter.[4] Thus, wages are frozen for the first twenty-four months of the contract and the contractor will only have to adjust pay rates when performance of the contract will take longer than twenty-four months. On September 1, 1993, DOL issued an Interpretive Bulletin which concluded that the 1993 amendments applied only to public contracts with a final bid date after September 22, 1993.

Eastwind, Inc., and the other party corporations are public works contractors who have contracts with bid dates prior to September 22, 1993. Work on their contracts continued after the effective date of the 1993 amendments. The contractors filed a declaratory judgment action, asserting that the amendments in question should apply to their pre-existing contracts and seeking an invalidation of the DOL's Interpretive Bulletin. Both sides subsequently moved for summary judgment.

The superior court granted the State's motion for summary judgment. The court held that applying the 1993 amendments to pre-existing contracts would "amount to making the statute retroactive," which the legislature

1. In *City and Borough of Sitka v. Construction and General Laborers Local 942*, 644 P.2d 227, 232–33 n. 11 (Alaska 1982), we noted that

   [c]ourts construing federal Davis–Bacon recognize the paternalistic design of the Act: "The language of the Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." *U.S. v. Binghamton Cons.Co.*, 347 U.S. 171, 177, 74 S.Ct. 438, 441, 98 L.Ed. 594, 599 (1954). *See Walsh v. Schlecht*, 429 U.S. 401, 411, 97 S.Ct. 679, 686, 50 L.Ed.2d 641, 650 (1977).

2. Prior to the 1993 amendments, AS 36.05.010 read:

   **Wage rates on public construction.** A contractor or subcontractor who performs work on public construction in the state, as defined by AS 36.95.010, shall pay not less than the current prevailing rate of wages for work of a similar nature in the region in which the work is done. *The current prevailing rate of wages for each pay period is that contained in the latest determination of prevailing rate of wages issued by the Department of Labor before the end of the pay period.*
   (Emphasis added.)

3. There is no dispute in this case regarding pre-amendment interpretation of the Act or that public construction contracts executed prior to September 1993 were governed by its terms. *See* former AS 36.05.070(a) (requiring that all public construction contracts "contain a provision stating the minimum wages to be paid ... and that rate of wages shall be adjusted to the wage rate for each pay period applicable under AS 36.05.010.").

4. AS 36.05.010 now provides:

   **Wage rates on public construction.** A contractor or subcontractor who performs work on public construction in the state, as defined by AS 36.95.010, shall pay not less than the current prevailing rate of wages for work of a similar nature in the region in which the work is done. *The current prevailing rate of wages is that contained in the latest determination of prevailing rate of wages issued by the Department of Labor at least 10 days before the final date for submission of bids for the contract. The rate shall remain in effect for the life of the contract or for 24 calendar months, whichever is shorter.* At the end of the initial 24–month period, if new wage determinations have been issued by the department, the latest wage determination shall become effective for the next 24–month period or until the contract is completed, whichever occurs first. This process shall be repeated until the contract is completed.
   (Emphasis added.)

did not expressly intend. The State subsequently moved for attorney's fees and was awarded $1,485.04 pursuant to Civil Rule 82. The contractors now bring this appeal.

## III. DISCUSSION

### A. Are the Amendments to AS 36.05.010 Applicable to Contracts with a Bid Date Prior to Enactment?

We start from the undisputed proposition that all statutes are presumptively non-retroactive. Alaska Statute 01.10.090 provides: **"Retrospective statutes.** No statute is retrospective unless expressly declared therein." Though the amendments to the Act were made effective September 22, 1993, the contractors contend that the legislature intended to include all pay periods following enactment, regardless of the bid date of the contract. Moreover, the contractors assert that this interpretation of the amendments does not constitute a retroactive application.

#### 1. Legislative history[5]

The contractors argue that legislative intent to include pre-enactment contracts in the scope of the amendments is evidenced by several sources. They observe that Representative Gail Phillips, the amendments' sponsor, stated that under the amended version of the Act, the DOL wage rate would "no longer apply immediately to contracts in progress."

Representative Phillips' full statement on this subject is as follows:

Current law provides that a construction contractor or subcontractor who performs work on public construction in the state shall pay not less than the current prevailing wage for work of a similar nature. However, an increase in the prevailing wage in the middle of a contract creates a financial hardship on the contractor; and anticipation of interim increases may also serve to inflate the cost of construction projects, because the contractor or subcontractor must absorb the costs....

The bill before you proposes to address these concerns.

Sponsor Substitute for House Bill 126 was introduced to amend AS 36.05.010 so that the prevailing wage as determined by the Department of Labor will no longer apply immediately to contracts in progress. The wage in effect at least 10 days before final bid submission will remain in effect for 24 months from the date the contract is awarded....

Representatives from Unions, Alaska General Contractors and the Department of Labor worked together to find appropriate language to be introduced, and it is my understanding that the bill now meets with the approval of each.

The contractors conclude that the term "in progress" must refer to all contracts already in place at the time of enactment. We disagree. The more plausible interpretation of this phrase is that it is used merely to refer to contracts which are being performed when DOL issues a new determination of prevailing wage rates. Thus in the quoted statement the phrase "contracts in progress" is another way of referring to, as Representative Phillips put it, "an increase in the prevailing wage in the middle of a contract." The phrase is nowhere keyed to the date a particular contract might have been let.

The contractors' reliance on similar statements by legislators and DOL is also misplaced. These pronouncements indicate only that the amendments were intended to relieve contractors of the burden of continually adjusting wages during the term of the contract. While the statements may be generally indicative of legislative motivation for amending the Act, they fail to establish that the amendments were meant to apply to contracts with a bid date prior to September 1993.

We conclude that the contractors have not shown that the legislature specifically intended for the 1993 amendments to apply to pre-enactment contracts. We note that in the past this court has strictly applied the requirements of AS 01.10.090 when determining whether a statute is meant to be applied retroactively. For instance, in State, Alco-

---

5. In reviewing questions of statutory interpretation, we apply our independent judgment. *Foss*

*Alaska Line, Inc. v. Northland Services, Inc.*, 724 P.2d 523, 526 (Alaska 1986).

*holic Beverage Control Bd. v. Odom Corp.,* 671 P.2d 375, 377 (Alaska 1983), we stated:

> AS 01.10.090 provides that no Alaskan statute can be applied retrospectively "unless expressly declared therein." This statute has been applied strictly. . . .
>
> . . . .
>
> It would have been simple for the legislature to have included in the amendment a statement that the new rates would apply to revenues collected in the 1980 calendar year. No such statement was made. Therefore, the new fees schedule cannot be applied to revenues collected prior to the effective date of AS 04.10.340.

(Citations omitted.) *See also Hansen v. Stroecker,* 699 P.2d 871 (Alaska 1985) (holding that a statute adopting "wait and see" approach to measurement of period in rule against perpetuities could not be retrospectively applied, since statute did not clearly provide for its application); *State, Dep't of Revenue v. Alaska Pulp America, Inc.,* 674 P.2d 268, 272 (Alaska 1983) ("Absent clear language indicating legislative intent to the contrary, a law is presumed to operate prospectively only.").

Finally, we note that not only did the legislature fail to include a provision specifically regarding retroactivity, it also declined to provide for an immediate effective date.[6] This provides further support for the proposition that the 1993 amendments were intended to have prospective application only.[7] *See, e.g., Schultz Constr., Inc. v. Ross,* 76 A.D.2d 151, 154, 431 N.Y.S.2d 144 (N.Y.App. Div.1980), *aff'd,* 53 N.Y.2d 790, 792, 422 N.E.2d 579, 439 N.Y.S.2d 919 (1981) (concluding that an effective date 60 days after an amendment was enacted suggests an intention to apply it prospectively); *Deutsch v. Catherwood,* 31 N.Y.2d 487, 341 N.Y.S.2d 600, 601, 294 N.E.2d 193, 194 (1973) ("The postponement of the effective date of each amendment furnishes critical and clear indicia of intent. If the amendments were to have retroactive effect, there would have been no need for any postponement."). *See also* 2 Norman J. Singer, *Sutherland Statutory Construction* § 41.04 (5th ed. 1991) ("Postponement of the effective date for an act indicates that it should have only prospective application.").

Because clear legislative intent indicating that the amendments are to be applied to pre-existing public contracts is lacking, we conclude that the amended version of the Act must be interpreted to apply non-retroactively.

### 2. *Retroactive application* [8]

■ This court has previously held that a statute will be considered retroactive insofar as it "gives to pre-enactment conduct a different legal effect from that which it would have had without the passage of the statute." *Norton v. Alcoholic Beverage Control Bd.,* 695 P.2d 1090, 1093 (Alaska 1985) (citing Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L.Rev. 692 (1960)). In the instant case, we must determine whether the contractors' interpretation of the 1993 amendments would give different legal effect to pre-enactment conduct.

■ The superior court answered this in the affirmative, concluding that applying the amendments to contracts bid on prior to September 22, 1993, would indeed constitute a retroactive interpretation of the statute. It stated:

> The contracts at issue were executed before the amendments were passed. The

---

**6.** The amendments were signed into law on June 24, 1993, and made effective on September 22, 1993, pursuant to Alaska Const., art. II, § 18 (laws passed by the legislature become effective 90 days after enactment unless otherwise provided).

**7.** The *Manual of Legislative Drafting,* on which Alaska legislators are to rely, states: "Be sure to include a bill section that provides expressly for the retroactive application of the bill or part of the bill. This section should be set out immediately preceding the effective date section. It is good drafting practice to provide an immediate effective date" for sections which are meant to apply retroactively.

**8.** Whether application of the post–1993 wage determination scheme to pre-enactment public contracts would amount to a retroactive application of legislation is a pure question of law which we review *de novo. Langdon v. Champion,* 752 P.2d 999, 1001 (Alaska 1988).

Contractors bid on those contracts under the old law. Thus, their bids took into account the possibility of wage changes. Applying the amendments to these pre-existing contracts would give pre-enactment conduct a different legal effect from that which it would have had without passage of the statute.

The contractors dispute the superior court's determination of the conduct relevant for purposes of assessing retroactivity. They argue that interpreting the amended Act to govern all active contracts and wages paid after September 1993 would constitute a prospective application of the statute, since this interpretation would affect only payrolls issued after the effective date of the amendments.[9]

The State asserts that since this interpretation would alter the contractors' rights and duties under an existing contract executed prior to the effective date of the amendments, it constitutes a retroactive application. The essence of the State's argument is as follows:

> If the 1993 amendments were to be applied as the Contractors contend, the Contractors' pre-enactment conduct would be given a different legal effect from that which it would have had without the passage of the statute.... There is no dispute that the Contractors relied on the law in effect at the time when they bid on public construction contracts that pre-date the September 1993 amendments. *But for* the amendments, the Contractors would have to pay workers according to the terms of the public construction contracts, which included the requirement to change

the pay rates if the Department issued a new Pamphlet.*

> * A retroactive application would give the Contractors a "non-bargained for" unexpected windfall because the state and political subdivisions would still be liable for the full price of the public construction contract which included an assumption that higher wages may have to be paid throughout the life of the contract....

(Citation omitted, emphasis in original.)

The question of which conduct is relevant for retroactivity purposes is complicated by the fact that almost any statute or regulation that affects the business environment in some respect—for instance minimum wage laws, building codes, and zoning ordinances—will alter the legal significance of the terms of certain contracts executed prior to enactment. Thus, the fact that interpreting amended AS 36.05.010 to apply to pre-enactment contracts alters the legal significance of certain contract terms does not alone establish that such an interpretation would constitute a retroactive application.[10]

Nonetheless, we conclude that in this case the relevant conduct for purposes of assessing retroactivity is the act of contracting. Other courts have reached a similar conclusion regarding the relevant conduct for purposes of retroactivity analysis. In *Schultz Construction*, 76 A.D.2d at 151, 431 N.Y.S.2d 144, the court held that an amendment to the prevailing wage determination statute did not apply retroactively to pre-existing public works contracts. Addressing the issue of whether new procedural requirements applied to contracts executed prior to the amendments, the court's reasoning is instructive insofar as it regards the date of contracting as relevant for purposes of assessing retroactivity. The court stated:

> In the absence of a clear expression of intent, the amendment and its background are such as to imply prospective application only to contracts entered into on or after its effective date.

*Id.* at 154, 431 N.Y.S.2d 144.

---

9. Under the contractors' interpretation, the conduct relevant to retroactivity analysis is payroll issuance, as opposed to contract execution. In other words, the contractors contend that the 1993 amendments authorize contractors holding pre-existing contracts to pay wages for the next twenty-four months according to the pamphlet in effect on September 22, 1993, the effective date of the amendments.

10. In this vein, the contractors note that "[n]ot every modification to a contractual promise violates the Contract Clause." We see no reason to reach this issue, however, since the State does not assert that an inclusive application of the 1993 amendments would violate the Contract Clause.

In *Deutsch v. Catherwood*, 341 N.Y.S.2d 600, 294 N.E.2d at 195, the court concluded that amendments to the Labor Law could not apply retroactively to public works contracts executed prior to the effective date of the amendments. After determining that the legislature did not intend the statute to have retroactive application, the court held that the new wage requirements could therefore not be imposed on pre-existing contracts. It concluded:

> To reach a contrary result in this case would serve to impose new conditions upon and impair the obligations of a contract already existing, under which the parties had fully entered into the performance of their work....

*Id.* See also *Roto–Rooter Services Co. v. Department of Labor*, 219 Conn. 520, 593 A.2d 1386, 1389 n. 5 (1991) ("Because the amendment ... affects the substantive obligation of employers to pay overtime compensation, and in view of the absence of a clearly expressed legislative intent that the amendment shall apply retrospectively, we agree with the trial court that the amendment is not subject to retrospective application."); *F.G. Compagni Constr. Co. v. Ross*, 79 A.D.2d 831, 435 N.Y.S.2d 144 (N.Y.App.Div. 1980) (holding that amendments to a labor law governing wages paid in performance of public works contracts did not apply to contracts executed prior to the effective date of the amendments).

In reaching the conclusion that the relevant conduct for purposes of assessing retroactivity is the act of contracting, we note that the former version of AS 36.05.070(a) required that all public construction contracts "contain a provision stating the minimum wages to be paid ... and that the rate of wages shall be adjusted to the wage rate for each period applicable under AS 36.05.010." As a consequence, the pre–1993 scheme was incorporated into every public contract that was executed.[11] Therefore, applying the amendments to AS 36.05.010 to these pre-existing contracts would effectively modify the meaning of the contracts as executed and, as such, give pre-enactment conduct a different legal significance. We decline to interpret the statute in this manner.

We have previously observed that "[t]he reason for the statutory presumption against retrospective legislation is that people in conducting their business should be able to rely on existing laws with reasonable certainty." *Norton*, 695 P.2d at 1093. Since application of this statute to pre-enactment contracts would impair this interest insofar as it would alter the practical significance of existing contractual terms, the policy behind this statutory presumption would be subverted.

If, on the other hand, these contract provisions were read merely as agreements to abide by the relevant wage determination laws, whatever they may be, we might reach a different result. Under this framework, each pay period would be evaluated under whatever system was in force at the time the pay period commenced. This is the argument advanced by the contractors when they assert that "[s]ince the amendments would not apply to payrolls issued prior to September 22, 1993, but only to those arising after the effective date, the application would not be retroactive, but prospective only."[12]

Had the pre–1993 wage determination scheme not been explicitly incorporated into the contracts in question, the contractors' argument that the amendments apply to all

11. We have held that whenever a contract is entered into, it implicitly incorporates all applicable laws in existence at that time. In *Skagway City School Board v. Davis*, 543 P.2d 218, 222 (Alaska 1975) we said:

> These provisions became a part of the contract for appellee's employment under the general rule that applicable laws in existence at the time of the formulation of the contract and which the parties are presumed to know are incorporated into the contract and become a part of it as though they had been expressly set out in the contract.

(Footnote omitted.) *See also Dillingham v. CH2M Hill Northwest, Inc.*, 873 P.2d 1271, 1276 n. 7 (Alaska 1994); *Stephan & Sons, Inc. v. Municipality of Anchorage*, 629 P.2d 71, 78 n. 19 (Alaska 1981).

See note 2, *supra*, for the text of former AS 36.05.010.

12. The contractors contend that the prevailing wage in effect at the time of enactment, as opposed to the prevailing wage at time of bidding, ought to apply to all contracts which pre-date enactment. The fact that this approach finds no support in the language of the statute further indicates the weakness of the contractors' position.

payrolls issued after September 1993 would be stronger. However, since the relevant contracts at issue specifically provide for the immediate application of new prevailing wages, we conclude that the act of contracting is itself sufficient to constitute the relevant pre-enactment conduct for purposes of retroactivity analysis.[13]

In short, since application of the 1993 amendments to pre-existing contracts would give a different legal effect to significant pre-enactment conduct—namely, the agreement to specific contractual terms governing wage determinations—we reject the contractors' interpretation of the 1993 amendments as inconsistent with the statutory presumption against retroactivity. We thus conclude that the superior court correctly held that the amendments apply only to public construction contracts with bid dates after September 22, 1993.[14]

### B. *Are the Contractors Public Interest Litigants?* [15]

The contractors claim that the superior court's award of attorney's fees award was improper because the contractors qualify as public interest litigants.[16] We have previously formulated a four-part test for identifying public interest litigation for purposes of attorney's fee awards:

(1) whether the case is designed to effectuate strong public policies; (2) whether, if the plaintiff succeeds, numerous people will benefit from the lawsuit; (3) whether only a private party could be expected to bring the suit; and (4) whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance.

*Oceanview Homeowners Ass'n v. Quadrant Constr. and Engineering,* 680 P.2d 793, 799 (Alaska 1984) (citing *Kenai Lumber Co. v. LeResche,* 646 P.2d 215 (Alaska 1982)).

Based on these criteria, we conclude that the superior court did not err in awarding attorney's fees to the State. We note that although all of the contractors, except Eastwind, Inc., have now paid wages according to the pre-amendment Act, each had a financial interest in the case at the time they filed the declaratory action. *See DeNardo v. State,* 887 P.2d 947 (Alaska 1994). Thus, the contractors had a substantial economic incentive to bring this suit; had their litigation been successful, the minimum authorized wage presumably would have been frozen at the September 1993 rate and the contractors potentially allowed to reduce the wages of employees governed by pre-enactment contracts.

The contractors' argument that "enforcing proper statutory interpretation" is a strong public policy does not alter this conclusion. *See Kenai Lumber Co.,* 646 P.2d at 223. Were we to hold otherwise, every party advancing a statutory interpretation argument

---

**13.** Under Article 6.1 (laws to be observed) of the "1984 Municipality of Anchorage Standard Specifications Streets—Drainage—Utilities—Parks" it is provided, in relevant part:

The Contract shall be governed by the laws of the State of Alaska. The Contractor at all times shall observe and comply with all Federal, State, and local laws ... in any manner affecting the conduct or the work....

It is further provided:

The Contractor shall comply with the Provisions of Title 36, Chapter 05 of the Alaska Statutes requiring the Contractor to pay not less than the current prevailing rate for wages.

In regard to the June 1993 Municipality of Anchorage, Department of Public Works' contract with Eastwind, Inc., for construction of the Baxter Road Street Improvements Project, it is stated in Section 90.02 of the Special Provisions section: This Contract is subject to and hereby incorporates by reference the "Municipality of

Anchorage Standard Specifications Streets—Drainage—Utilities—Parks" dated 1984....

**14.** Admittedly this holding could lead to the situation where employees of public works contractors are paid non-uniform minimum wages. Nevertheless, for the reasons discussed above, we think it inappropriate to apply the text of the questioned amendments literally.

**15.** We review a trial court's determination that a party is not a public interest litigant for abuse of discretion. *Anchorage Daily News v. Anchorage School Dist.,* 803 P.2d 402, 404 (Alaska 1990).

**16.** The "public interest litigant" exception was established in response to concern that citizens would be deterred from litigating questions of public importance out of "fear of incurring the expense of the other party's attorney's fees." *Kenai Lumber Co. v. LeResche,* 646 P.2d 215, 222 (Alaska 1982).

would automatically qualify as a public interest litigant. The purpose of the exception would be ill served by adoption of the contractor's rationale.[17]

We thus conclude that the superior court did not abuse its discretion in determining that the contractors fail to qualify as public interest litigants and awarding the State attorney's fees pursuant to Civil Rule 82.

## IV. *CONCLUSION*

We AFFIRM the superior court's order granting summary judgment to the State and awarding attorney's fees against the contractors.

---

17. We think the claim that the general public would save money on public construction under the interpretation advanced by the contractors unpersuasive, since there is no evidence to suggest that cost to the public of pre-enactment contracts is not already fixed by the former terms of the Act. As the State persuasively argues, "[I]t is the Contractors, not the State, [who] would benefit financially if the 1993 amendments apply retroactively."