Evelyn RUSH, Appellant,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Pat Pourchot, Commissioner, Appellee.

No. S–10926.

Supreme Court of Alaska.

Sept. 17, 2004.

Geoffrey Y. Parker, Law Office of Geoffrey Y. Parker, Anchorage, for Appellant.

John T. Baker, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I.  INTRODUCTION

Mat–Su Resource Conservation and Development, a non-profit corporation, owns the buildings that make up the Big Lake Hatch-

ery and leases from the state the land under those buildings. The Alaska Department of Natural Resources plans to auction the land. It intends to run the auction according to the terms of AS 38.05.090 as that statute read when the corporation took on the lease, which will require any buyer of the land to also purchase the buildings from the corporation. The statute has since been amended. The appellant, Evelyn Rush, argues that the auction and the disposition of the buildings must follow the current version of the statute, but the state claims that doing so would unlawfully give the statute retroactive effect. We hold that applying the current statute would have an impermissible retroactive effect on property rights.

## II. FACTS AND PROCEEDINGS

### A. Factual History

The ten-acre parcel, home to the Big Lake Hatchery, lies on Meadow Creek in the Matanuska–Susitna Borough. In 1975 the Department of Natural Resources (DNR) leased the parcel to the Alaska Department of Fish and Game (ADF & G) under a twenty-year lease so that ADF & G could start a fish hatchery. The lease incorporated some, but not all, of the provisions of AS 38.05.090, a statute governing the disposition of improvements upon the termination of a lease of state land. In 1993 ADF & G stopped operating the hatchery, which by that time consisted of several buildings on about ten acres, and assigned the lease to the Matanuska–Susitna Borough (the Borough). The Borough and Mat–Su Resource Conservation and Development (RC & D), a non-profit corporation, agreed that RC & D would provide a caretaker for the site.

The Borough accepted the assignment from ADF & G on April 26, 1994; DNR approved the transaction a month later. Also on April 26, 1994, the state transferred the buildings on the site to the Borough. Under the transfer agreement, the Borough could not convey an interest in the buildings for two years, after which it would automatically gain unconditional title. Also on that day, RC & D and the Borough extended their caretaker agreement, granting RC & D the right to manage and "conduct its own busi-

ness in and from" the hatchery, and the Borough and DNR extended the term of the lease to 2015. In 1996 the Borough assigned the lease to RC & D, with DNR's approval.

In 1998 confusion arose over who owned the buildings. The president of RC & D wrote to the Borough manager, claiming that the buildings were included with the lease assignment because the various April 26, 1994 agreements "consolidated" the buildings and land into "one package." The letter offered no documentation for this understanding of the transactions. A DNR staffer acknowledged the confusion over ownership but did not resolve it.

In 1999 RC & D applied to purchase the land. DNR found that selling the parcel at auction would be in the best interest of the state, a prerequisite to the sale under AS 38.05.035(e). DNR's decision announced that "[i]f Mat–Su RC & D is not the highest bidder for the land, the highest bidder must pay Mat–Su RC & D for the appraised value of the structures." This directive, as more fully described below, corresponds to the requirements of AS 38.05.090 as it stood before its amendment in 1997. Evelyn Rush, a neighbor of the hatchery site, appealed the decision to the Commissioner of DNR, challenging RC & D's ownership of the buildings. The Commissioner remanded the case to DNR staff for a determination of who owned the buildings. In response, on February 15, 2000, the Borough passed an ordinance "convey[ing] the buildings, structures, and equipment on the Big Lake Hatchery to RC & D." DNR then found that RC & D owned the buildings and otherwise affirmed its previous decision. The Commissioner affirmed the staff decision. Rush then appealed to superior court.

### B. Procedural History

On appeal to the superior court, Rush challenged DNR's decision, advancing several different reasons to support her contention that the sale would not be in the best interests of the state. The claims relevant to this appeal argue that the terms that DNR set out for the auction are arbitrary. Rush claimed that "requiring a bidder to

pay Mat–Su RC & D the appraised value of the buildings" is unlawful under the version of AS 38.05.090 currently in force. The superior court held that the department correctly applied the former version of the statute because the 1997 amendments "affect[ ] substantive rights and [are] not merely procedural." The trial court affirmed DNR in all other respects, but Rush appeals only her claim that the current version of AS 38.05.090 should apply.

## III. DISCUSSION

### A. Standard of Review

■ On appeal from an administrative agency, we substitute our judgment for that of the agency on questions which do not implicate agency expertise.[1] This appeal presents a pure question of law that requires no such expertise.

### B. Rush Did Not Waive Her Claim that the Auction of the Hatchery Land Should Follow the Present Version of AS 38.05.090.

Two distinct questions arise in cases concerning the retroactive application of statutes. First, may the statute be applied retroactively? Second, would applying the statute in this case be retroactive? In this case, the answer to the first question is beyond dispute. Alaska law holds that "[n]o statute is retrospective unless expressly declared therein,"[2] and there is no such declaration for the amended AS 38.05.090.[3] The second question, whether applying the current version of the statute would have a retroactive effect, engages us here. If it would be retroactive, then it may not be applied.

■ The state claims that Rush raised the issue of retroactivity for the first time in her reply brief before the superior court and therefore waived her claim. While the state is correct that Rush used the term "retroactive" for the first time in her superior court reply brief, this does not constitute a waiver of any claim because Rush is not claiming that any law should be applied retroactively. The heart of her position is that the termination of a lease of state land ought to be governed by the law in effect at the time of the termination; that the previous version imposed different requirements is not raised in her claim. It was the state's response that raised the issue of retroactivity, saying that it could not lawfully apply the current statute to this lease because doing so would give the statute retroactive effect.

Rush's counter-argument, raised in her reply brief below, is that applying the current statute to this lease will not give it retroactive effect. This is the first point in the litigation at which Rush had any need to refer to retroactivity. When this court's case law discusses when the court will or will not consider "new arguments," we mean entirely new legal theories.[4] Rush's reference to retroactivity in her reply brief below was not a new theory. It was an appropriate reply to the State's argument, supporting her basic argument that the current AS 38.05.090 should apply to this lease termination. Furthermore, she does not change that line of attack on appeal. Her basic claim has been the same all along: The current version of the statute should be applied. Rush has not waived her claim.

### C. Applying the Current Version of AS 38.05.090 Would Have an Impermissible Retroactive Effect on Transactions Conducted Under the Former Version.

■ Alaska Statute 38.05.090 governs the disposition of improvements placed on state land by lessees of the land. In 1997 the

1. *Earth Res. Co. of Alaska v. State, Dep't of Revenue,* 665 P.2d 960, 964–65 (Alaska 1983).

2. AS 01.10.090.

3. The only express declaration of retroactivity at all connected to AS 38.05.090 applies to a different part of the Act that amended the statute. Ch. 91, § 44, SLA 1997.

4. *See, e.g., Krossa v. All Alaskan Seafoods, Inc.,* 37 P.3d 411, 418–19 (Alaska 2001) (rejecting as an impermissible "new argument" the plaintiff's claim that contract was void because he entered it under duress, where his arguments below all sought enforcement of the contract as he interpreted it).

legislature changed the statute in a number of ways.[5] Two of the changes are relevant here. First, the former statute required removal of improvements owned by a lessee, so long as removal would not damage the land.[6] The current statute also requires removal and provides that lessees must return the land to "good and marketable condition."[7] Under the former statute, improvements or chattels whose value exceeded $10,000 could be sold at public auction if not removed, with the proceeds going to the lessee.[8] Most importantly, any subsequent purchaser of the land was required to purchase improvements that had "become fixtures of the land," with the proceeds also going to the former lessee.[9] Under the current statute, any property left on the leasehold, whether a fixture or not, becomes the property of the state and the lessee receives no compensation,[10] unless they are "[p]rivate residential improve-

---

5. Ch. 91, § 21, SLA 1997. The pre–1997 version of AS 38.05.090 provided in relevant part:

> **Removal or reversion of improvements upon termination of leases.** (a) Improvements owned by a lessee on state land shall, within 60 days after the termination of the lease, be removed by the lessee if removal will not cause injury or damage to the land. The director may extend the time for removing improvements in cases where hardship is proven. The retiring lessee or permittee may, with the consent of the director, sell improvements to the succeeding lessee or permittee.
>
> (b) If improvements or chattels, or both, having an appraised value exceeding $10,000 as determined by the director are not removed within the time allowed, the improvements or chattels or both shall, upon notice to the lessee, be sold at public sale under the direction of the director. The proceeds of sale inure to the lessee who placed the improvements or chattels on the land after paying to the state all rents due and expenses incurred in making the sale. If there are no other bidders at the sale, the director may bid in the name of the state. The bid money shall be taken from the fund to which the land belongs and the fund shall receive all money or other value subsequently derived from the sale or leasing of the improvements or chattels. The state acquires all the rights that any other purchaser could acquire by reason of the purchase.
>
> (c) If improvements or chattels, or both, having an appraised value of $10,000 or less, as determined by the director, are not removed within the time allowed, they revert to the state and absolute title vests in the state. The preference right lessees of grazing or forest land may follow the provisions for removal of improvements upon termination of the lease as authorized in the cancelled federal lease or permit.
>
> (d) Improvements of the lessee which have become fixtures of the land shall be purchased by the subsequent purchaser or lessee of the land if the improvements were authorized in the former lease or by permit from the director. Upon the termination of a lease, and at additional times which may be necessary, the value of the authorized fixtures remaining on the land shall be set by agreement between the former lessee and the director or, if agree-

ment cannot be reached, by an independent appraisal made at cost to the former lessee. The current version of AS 38.05.090 provides in relevant part:

> (a) Unless otherwise agreed to in writing by the commissioner, a lessee shall remove from a former leasehold
>
> (1) all personal property, including above-ground tanks, transportable buildings, equipment, machinery, tools, and other goods, not belonging to the state, within 30 days after termination of the lease; and
>
> (2) all buildings and fixtures, including gravel pads, and below-ground tanks, foundations, and slabs, not belonging to the state, within 60 days after termination of the lease.
>
> (b) Unless otherwise agreed to in writing by the commissioner, the lessee shall restore the leasehold to a good and marketable condition, acceptable to the commissioner, within 120 days after termination of the lease.
>
> (c) If the lessee does not remove personal property, buildings, and fixtures as required within the time specified under (a) of this section, title to the personal property, buildings, and fixtures that remain automatically vests in the state unless the commissioner elects to remove and dispose of the remaining personal property, buildings, and fixtures of the lessee. The commissioner may assess upon the lessee the cost of removing and disposing of personal property, buildings, and fixtures remaining upon the land.
>
> (d) If the lessee does not restore the land within the time period specified under (b) of this section, the commissioner may have the land restored and assess the costs upon the lessee.
>
> (e) As part of a lease agreement, and in order to protect the public interest, the commissioner may require terms for removal or reversion of improvements additional to those specified in (a)-(d) of this section.

6. Former AS 38.05.090(a).

7. AS 38.05.090(a), (b).

8. Former AS 38.05.090(b).

9. *Id.* at (d).

10. AS 38.05.090(c).

ments." [11] The current version also includes stronger restoration requirements than the former statute, which could become important later in the life of this parcel [12] but are not implicated directly by the DNR decision from which Rush appeals.

■ As described above, the question in this case is whether the current version of AS 38.05.090 would have a retroactive effect if applied to the termination of RC & D's lease. If it would, the statute may not be applied. "[A] statute will be considered retroactive insofar as it 'gives to pre-enactment conduct a different legal effect from that which it would have had without passage of the statute.' " [13] A statute creates this "different legal effect" if it "would impair rights a party had when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." [14]

Under the former statute, when a lessee acquired fixtures by purchasing or building them, among the property rights he gained was the right to force any buyer of the state land to purchase the fixtures. Under the new statute, that property right no longer exists. The record is not clear as to whether RC & D acquired the buildings under the old law when it accepted the assignment of the lease or under the new law when the Borough passed its ordinance conveying them. The timing of the acquisition does not matter to the outcome of the case, however, because under either scenario, applying the new law would alter the consequences of a transaction conducted under the former version and therefore have a retroactive effect.

■ The former statute was in effect in 1996 when RC & D accepted assignment of the lease. If RC & D acquired the buildings at that time, then it had the right to force their purchase upon sale of the land. Applying the new law would take away that right, thus altering the legal effect of its acquisition. Alternatively, RC & D may have only acquired the buildings as a result of the 2000 Borough ordinance, after the law changed. But the Borough acquired the hatchery fixtures from ADF & G in 1994, under the old statute, and therefore its property rights in the buildings included the right to force their sale. At the same time, the Borough gained the right to transfer everything it owned—the buildings and all of its property rights it had in them. The ability to transfer all rights is a basic aspect of property: A property right "consists not merely in its ownership and possession, but in the unrestricted right of . . . disposal." [15]

This principle is most commonly encountered in the law of zoning. A landowner may have a "grandfathered" right to use his property in a way that current zoning would not allow because he had put the land to that "nonconforming use" before it was barred.[16] When the owner sells the land, the purchaser takes the grandfathered right to continue the nonconforming use.[17]

Similarly, here the right to force a sale of the fixtures was part of what the Borough gave RC & D when it transferred the buildings via the 2000 Borough ordinance. Applying the new statute would deny RC & D that right and thus diminish the Borough's right to transfer all that it held, a right that it gained when it acquired the buildings from ADF & G in 1994. This would change the legal effect of the 1994 transaction, the mark of a retroactive application.

## IV. CONCLUSION

Because the current version of AS 38.05.090 may not be applied retroactively

---

11. *Id.* at (f).

12. *Id.* at (d), (e). Neither party makes any argument concerning the effect of these provisions on the retroactivity of the statute as a whole.

13. *Eastwind, Inc. v. State*, 951 P.2d 844, 847 (Alaska 1997) (quoting *Norton v. Alcoholic Beverage Control Bd.*, 695 P.2d 1090, 1093 (Alaska 1985)).

14. *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 245, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

15. *O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401, 404 (1949).

16. *See* 1 KENNETH H. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING §§ 6.0–6.06 (4th ed.1996).

17. *See* 8A McQUILLIN'S MUNICIPAL CORPORATIONS § 25.183.50 (3d ed.2003).

and because applying it to the sale of this parcel would have a retroactive effect regardless of when RC & D acquired the build- ings, we AFFIRM the decision of the superior court.